770 So.2d 507 (2000)
John Felder CRAWFORD, II
v.
BLUE CROSS BLUE SHIELD OF LOUISIANA.
No. 99 CA 2503.
Court of Appeal of Louisiana, First Circuit.
November 3, 2000.
*509 Luke Edwards, Lafayette, Counsel for Plaintiff/Appellee John Felder Crawford, II.
Stephanie B. Laborde, Baton Rouge, Counsel for Defendant/Appellant Louisiana Health Service and Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana.
Before: CARTER, C.J., WEIMER, and KLINE,[1] JJ.
WEIMER, J.
The plaintiff in this action, John Felder Crawford, II, sought penalties and attorney's fees pursuant to LSA-R.S. 22:657 for the failure of defendant, Blue Cross/Blue Shield of Louisiana (Blue Cross) to pay timely medical expenses incurred in a hospital stay that was pre-certified by the insurer. The trial court ruled in plaintiff's favor, awarding a penalty of $27,202.22 and attorney's fees in the amount of $5,000.00.
Blue Cross perfected this appeal. Mr. Crawford answered the appeal. For the following reasons, we amend the judgment and affirm as amended.

BACKGROUND
The events that preceded the filing of this lawsuit were stipulated to by the parties prior to trial, as follows:
1. Blue Cross Blue Shield of Louisiana issued a policy of major medical health insurance to John Felder Crawford, II, bearing policy number 498 748X1.
2. On November 4, 1995, Crawford was in an automobile accident wherein he suffered injuries, for which he refused treatment at the scene.
3. On December 7, 1995, Crawford was hospitalized at St. Frances Cabrini Hospital in Alexandria. On December 9, 1995, Crawford was transferred to Lafayette General Medical Center. Crawford was discharged from Lafayette General Medical Center on December 20, 1995.
4. Claims for the medical bills incurred as a result of these hospitalizations were submitted to Blue Cross for payment under the provisions of his policy.
5. The primary diagnosis provided by Lafayette General Medical Center to Blue Cross for these claims was "300.11," which is listed in the DSM-II under the general classification of "Neurotic Disorders, Personality Disorders, and other Nonpsychotic Mental Disorders," within the subclassification of "Hysteria."
6. The claims were initially denied on the basis that the hospital charges for which payment was being sought constituted charges for Mental and Nervous Conditions, which were excluded from coverage under the terms of his policy.
7. The appeal provisions in Crawford's policy instruct an insured to direct questions about the payment of a claim to:
Customer Service Center Blue Cross and Blue Shield of Louisiana P.O. Box 98029 Baton Rouge, Louisiana XXXXX-XXXX
8. In response to the initial denial, Crawford and others on his behalf contacted *510 Blue Cross by telephone and written correspondence requesting payment of the disputed claim. The correspondence was addressed to:
Ms. Cathe Thoman[2] Blue Cross-Blue Shield of Louisiana Subrogation/Worker's Compensation Specialist Liability and Recovery Unit P.O. Box 98029 Baton Rouge, Louisiana XXXXX-XXXX
9. Crawford filed the instant suit on April 4, 1996.
10. Upon review of the denial of these claims, Blue Cross reversed its prior denial based upon the medical records in its possession at that time, and paid Crawford's claims in accordance with the terms of his policy.
11. Despite the Mental and Nervous Condition diagnosis contained on the original claim submitted by the Hospital, Blue Cross ultimately determined that the entire hospitalization was covered under Crawford's policy, when it reviewed additional medical information in its possession, other than some disallowed charges which are not in dispute in these proceedings.
12. The amount which was in dispute on these claims totals $26,030.22.[3]
13. The claims for medical expenses which were formerly in dispute in these proceedings are now considered by all parties to have been paid in full.
14. All documents listed as exhibits on the pre-trial order and/or exchanged between the parties at least thirty (30) days prior to trial will be deemed to be authentic and copies shall be accepted in lieu of the originals. All other objections to admissibility are reserved for trial.
This matter went to trial on June 28, 1999. On July 12, 1999, the trial court issued oral reasons for judgment, which included the following factual findings:
1. Mr. Crawford was admitted to St. Frances Cabrini Hospital[4] in Alexandria, Louisiana, with a diagnosis of postconcussion syndrome, and he was later transferred to Lafayette General Medical Center.
2. Dr. James Gengelbach, the medical director of Blue Cross, pre-certified Mr. Crawford to the hospital as having coverage. During the pre-certification process, Dr. Gengelbach concluded hospitalization was a medical necessity, irrespective of what the lay diagnosis was.[5]
3. In releasing Mr. Crawford, the hospital submitted to Blue Cross a request for payment that was denied based upon the fact that the codes submitted indicated the hospitalization was for matters that were not covered by the Blue Cross policy.
4. "Immediately and subsequent to" the denial, plaintiff's counsel submitted materials to Blue Cross, and Blue Cross was contacted and called. All of the letters were forwarded to the claims office, but there is no clear indication of what was done with the requests after that. Blue Cross had no official policy for appealing a denial of benefits, but the appeal could be oral or written.
*511 5. On February 28, 1996, a demand letter was sent, which letter was "sufficient to put Blue Cross/Blue Shield on notice that plaintiff wanted his money."
6. Subsequent to the demand letter, all matters regarding the claim were forwarded to the Blue Cross legal department.[6]
7. It was not until July of 1996 that the medical director of Blue Cross considered the issues regarding payment after receiving materials forwarded from the legal department of Blue Cross. He immediately determined Mr. Crawford's claim was compensable and covered "irrespective of the diagnosis that had been placed on there by the computer." Once the medical director reviewed the claim, it was immediately authorized for payment.
8. Blue Cross was arbitrary and capricious for failure to review the matter and pay the claims immediately following the requests by plaintiff's counsel.
9. The bills for St. Frances Cabrini Hospital were for $4,612.42, and for Lafayette General Hospital were for $22,589.80.
10. The work product of plaintiff's counsel supported an award of $5,000.00 attorney's fee.
On appeal, Blue Cross assigns the following errors:
A. Procedural Errors
1. The parties were denied the right to present closing arguments to the Court, despite the Court's ruling to the contrary and the parties' preservation of their rights to do so.
2. The Trial Court awarded a penalty in excess of the amount of the claim stipulated by the parties.
3. The final Judgment does not accurately reflect the Oral Ruling of the Trial Court.
B. Factual Errors
1. The Trial Court erroneously held that the December 28, 1996 correspondence from plaintiff's counsel to Cathe Thoman in Blue Cross' Subrogation Department constituted an appeal of the denial of plaintiff's claim.
2. The Trial Court erroneously held that Blue Cross took no action with respect to plaintiff's additional claims submissions.
3. The Trial Court erroneously held that plaintiff's discharge diagnosis, provided by his treating physicians who have refused to change this diagnosis despite multiple requests, was provided by a computer or a lay person.
C. Errors of Law
1. Louisiana Revised Statute 22:657 does not provide authority for the penalty awarded by the Trial Court.
2. The Trial Court erroneously found Blue Cross to have been arbitrary and capricious in its denial of this claim.
3. The attorney fees awarded by the Trial Court were excessive.
In his answer to the appeal, Mr. Crawford seeks to have the judgment modified as follows: 1) by awarding multiple penalties for each individual violation of the statute, instead of one penalty; 2) by increasing the attorney's fee to an amount equal that provided in plaintiff's contract with his attorney and an amount for defending the appeal; and 3) by increasing the penalty to double the amount owed to the hospitals prior to the payment by Blue Cross.[7]

DISCUSSION

Oral Argument:
Counsel for Blue Cross states that she was denied an opportunity to present oral argument despite the trial court's earlier *512 indication she would have such an opportunity.
Whether oral argument is presented in a civil trial without a jury is totally immaterial. It is axiomatic that the statements of counsel are not evidence; the trier of fact's determinations are to be based solely on evidence and not upon the statements or suggestions of the attorneys. See Cooper v. United Southern Assurance Co., 97-0250, pp. 17-18 (La.App. 1 Cir. 9/9/98), 718 So.2d 1029, 1038. Furthermore, it is well established that the trial judge has great discretion in the manner in which proceedings are conducted before the court, and it is only upon a showing of gross abuse of discretion that appellate courts have intervened. State, Through Department of Social Services Support Enforcement Services v. Guichard, 94-1795, p. 10 (La.App. 1 Cir. 5/5/95), 655 So.2d 1371, 1378, writ denied, 95-1405 (La.9/15/95), 660 So.2d 454.
Further, we note that Blue Cross was provided an opportunity for argument by virtue of the submission of a post trial memorandum, which was filed on July 7, 1999. On the date previously set for oral argument, July 12, 1999, when the trial court gave oral reasons for judgment, there was no contemporaneous objection for the lack of oral argument.
This assignment of error is without merit.

Amount Stipulated:
On February 1, 1999, Mr. Crawford stipulated that the amount in dispute, which represented charges by two hospitals, totaled $26,030 .22. In light of this stipulation, Blue Cross argues that it was error for the trial court to determine that Mr. Crawford was entitled to a penalty of $27,202.22. We agree.
A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stevens v. Winn-Dixie of Louisiana, 95-0435, pp. 7-8 (La.App. 1 Cir. 11/9/95), 664 So.2d 1207, 1212. Stipulations between the parties are binding on the trial court when not in derogation of law. Bullock v. Graham, 96-0711, p. 4 (La.11/1/96), 681 So.2d 1248, 1250.
In the present case, it is clear from the stipulations that Blue Cross had paid the disputed amounts to the hospitals prior to the time the stipulation was made. Counsel for Mr. Crawford should have been aware of the total of his client's claim when he entered into the stipulation. It was too late to retract on the day of the trial. The trial court offered the option of either continuing the matter or to be bound by the stipulation. Counsel chose to proceed. Thus, although we would conclude that absent a stipulation to the contrary Mr. Crawford would be entitled to a penalty in the amount awarded by the trial court, that penalty must be reduced to the stipulated amount of $26,030.22. Id.

Amount of Judgment:
Blue Cross urges this court to reduce the amounts awarded in the judgment because the judgment conflicts with the language in the reasons for judgment. First, Blue Cross would have us eliminate the amount awarded in the judgment for "penalties" because in the reasons for judgment the trial court specified that the total was composed of two figures owed to two hospitals. Blue Cross contends the trial court did not intend to award any penalty, but intended merely to provide that the amounts of the medical expenses were to be paid by Blue Cross. Such a contorted reading of the reasons for judgment would ignore the fact that Blue Cross stipulated prior to trial that the claims for medical expenses were paid in full at the time of the stipulation. We refuse to assume the trial court erroneously disregarded the stipulation.
Next, Blue Cross assails the judgment's award of judicial interest. Blue Cross asserts the trial court reasons for judgment indicate an intent that interest would run on the amount of the penalty only, but the judgment erroneously provides *513 that interest would run on the total of the penalty and the attorney's fees. We disagree. Where there is a discrepancy between the judgment and the reasons for judgment, the judgment prevails. Louisiana Insurance Guaranty Association v. International Insurance Company, 551 So.2d 50, 51 (La.App. 1 Cir.1989).
There is no merit to this assignment of error.

Sufficiency of Demand for Payment:
Blue Cross argues the demand letter of February 28, 1996,[8] from Mr. Crawford's counsel to Ms. Cathe Thoman in the Liability and Recovery Unit of Blue Cross did not meet its "appeal" requirements as outlined in its policy. Blue Cross asserts the trial court erred in finding the letter was sufficient to put Blue Cross on notice that Mr. Crawford wanted his claims paid. This red herring issue attempts to shift the responsibility for the processing of Mr. Crawford's claim to the claimant and away from the insurer, contrary to the provisions of the penalty statute, LSA-R.S. 22:657.
The statute provides, in pertinent part:
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, [claims for accidental death] shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist.
Thus, the issue in this case is not whether Mr. Crawford "appealed" the denial of his claim as allegedly provided in the policy,[9] but whether the "written notice and proof of claim, in the form required by the terms of the policy" was furnished to Blue Cross more than 30 days prior to the payment of the claim. The policy issued to Mr. Crawford merely requires that proof of the claim be submitted by him, or in some instances by the hospital, in writing and in a form acceptable by Blue Cross. Although the trial court identified the February 28, 1996 correspondence to Blue Cross as sufficient demand for payment, our review of the record reveals that notice and proof of claim was submitted by Mr. Crawford's counsel prior to that date, in correspondence dated January 4, 9, and 29, 1996. On February 9, 1996, counsel wrote to Ms. Thoman, stating:
It is my understanding that you have contacted Mr. Crawford and indicated to him that the medical bills incurred by him as a result of his second automobile accident were not going to be paid by Blue Cross/Blue Shield pursuant to the provisions of the policy. As we feel certain that these are expenses which are covered pursuant to the terms of your policy, we again make formal demand for the immediate payment of all of the medical bills submitted to your company.
If the above correspondence was insufficient for a submission of the claim, or if the correspondence to Ms. Thoman never reached the Customer Service Center as Blue Cross now insists was required, it was incumbent on Blue Cross to respond to Mr. Crawford's counsel with instructions for proper submission of the claims. Mr. Crawford cannot be charged *514 with having knowledge of the intricate maze of interdepartmental requirements of the insurance company.
Considering the record before us, there is no error in the trial court's conclusion that sufficient demand for payment of his claim was made by Mr. Crawford such as to trigger the penalty provision of LSA-R.S. 22:657.
There is no merit to this assignment of error.

Failure to Take Action:
Blue Cross asserts the trial court was manifestly erroneous in its determination that Blue Cross took no action with respect to plaintiff's additional claims submissions. Counsel for Blue Cross lists several actions taken by Ms. Thoman in contacting various persons within the Blue Cross network.
Even if the statement by the trial court was incorrect, such error does not affect the conclusion that Blue Cross failed to investigate the nature of Mr. Crawford's claim within the time limits of the penalty statute, LSA-R.S. 22:657. Our examination of the record reveals Mr. Crawford's records from Lafayette General Medical Center were provided by FAX to Blue Cross on December 19, 1995. The first page of the records lists Mr. Crawford's chief complaint as "[n]eck pain, back pain, weakness, [and] difficulty speaking." The report also provides the history of Mr. Crawford's collapse in a parking lot and his original admission to the hospital in Alexandria. A simple reading of the records in its possession as early as December of 1995 should have alerted Blue Cross to the discrepancy between the coding which indicated treatment for nervous and mental conditions and the actual medical necessity that led to Mr. Crawford's hospital admissions. In its brief to this court, Blue Cross admits that once suit was filed, its legal department treated the matter as an appeal and consulted its own medical director who promptly approved the claims for payment. However, the record does not explain why over three months elapsed between the filing of suit on April 4, 1996, and the payment of the claims in July of 1996. With the information Blue Cross had in its possession, the delay in consulting the medical director who had pre-certified the hospital stay was inexcusable.
This assignment of error is without merit.

Discharge Diagnosis:
On appeal Blue Cross asserts the trial court erred in finding that the discharge diagnosis was provided by a computer or a lay person instead of finding the discharge diagnosis was provided by Mr. Crawford's treating physicians. Next, Blue Cross takes the novel position that the trial court should have accorded greater weight to those treating physicians (who did not testify at trial) than to the medical director of Blue Cross (whose testimony at trial was weighed by the trial court as it was impressed with his credibility).
After reviewing the record, we find no error in the trial court's references to computers and lay persons. It is apparent that some of the documents introduced into evidence were generated by persons using computers. It is also apparent from the testimony elicited at trial that the persons on the staff at Blue Cross who handled Mr. Crawford's claim, with the exception of Dr. Gengelbach, were lay, not medical, personnel.
Dr. Gengelbach summarized his opinion as to what happened with the discharge diagnosis as follows: "I think Lafayette General just put down the wrong diagnosis. That's why the claim didn't get paid the first time and that this is not a psychiatric or mental [or] nervous admission, but in fact was more likely a medical admission from the information that I had." The medical records introduced into evidence substantiate the conclusion reached by Dr. Gengelbach. We cannot say the trial court erred in finding his testimony credible.
*515 This assignment of error is without merit.

Statutory Authority for Penalty for Arbitrary and Capricious Denial of Claim:
In its brief, Blue Cross has labeled its final three assigned errors as "errors of law." Blue Cross asserts no penalty pursuant to LSA-R.S. 22:657 should have been assessed against it because (1) Blue Cross denied Mr. Crawford's claim within 30 days and (2) the denial was based on just and reasonable grounds. The statute defines the required grounds as those that "would put a reasonable and prudent businessman on his guard." The jurisprudence has equated a denial not based on just and reasonable grounds with arbitrary and capricious behavior. See Nickels v. Guarantee Trust Life Insurance Company, 563 So.2d 924, 928 (La.App. 1 Cir.1990). However, what constitutes just and reasonable grounds for failing to pay has been held to be a question of fact to be determined from the circumstances of the case in question. Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584, 589 (La.App. 1 Cir. 1984). Thus, these are not legal issues, as Blue Cross asserts. The trial court's finding on this issue should not be disturbed unless it is clearly wrong. Dorsey v. Board of Trustees, State Employees Group Benefits Program, 482 So.2d 735, 739 (La. App. 1 Cir.1985), writs denied, 486 So.2d 735, 736 (La.1986).
This court has previously set forth the rules to be considered when determining whether penalties should be imposed under this statute, as follows:
Whenever a claim is properly presented under a health and accident contract, it must be paid within 30 days, unless just and reasonable grounds exist, such as would put a reasonable and prudent businessman on his guard that the claim is unjust....
Where an insurer's interpretation of its policy is reasonable and not contrary to any existing jurisprudence, the denial of a claim is not arbitrary so as to require the imposition of penalties, and the insurer has a right to a judicial determination of the issues. While a court may disagree with the interpretation the insurer places upon its policy, its actions in refusing to pay should not necessarily subject it to the penalty provisions of the statute. However, when an insurer chooses to resist liability based on a supposed defense, which a reasonable investigation would have proved to be without merit, it will be liable for statutory penalties. (Citations omitted; emphasis added.)
Bonura v. United Bankers Life Insurance Company, 552 So.2d 1248, 1254 (La.App. 1 Cir.1989), writ denied, 558 So.2d 1125 (La. 1990).
In support of these two alleged errors Blue Cross cites several cases, all of which are distinguishable from the instant one.
A second circuit case cited by Blue Cross, Shrader v. Life General Security Insurance Company, 588 So.2d 1309 (La. App. 2 Cir.1991), writ denied, 592 So.2d 1317 (La.1992), is illustrative of the jurisprudence interpreting LSA-R.S. 22:657, but it does not support the contentions of Blue Cross that its denial of Mr. Crawford's claim was reasonable. Because the arbitrary and capricious nature of an insurer's reasons for refusing to pay is a question of fact, the determination must be made from the facts and circumstances of each case. Shrader, 588 So.2d at 1315. In Shrader, the penalty issue was bifurcated into two inquiries: whether the insurer was arbitrary and capricious in delayed payment of a portion of the claim, and whether the insurer was arbitrary and capricious in denying another portion of the claim. Concerning the delayed payment, the record showed the claim was submitted on June 5, 1989, and denied on July 22, 1989. Subsequently, payment of the claim was authorized, and payment was made on August 17, 1989. Although the insurance representative testified the original denial of coverage was due to a lack of information, *516 she admitted no other information was received between July 22 and August 11. The district court concluded more than 30 days elapsed between defendant's receipt of plaintiff's written demand and proof of loss and its payment on the claim and that its failure to pay the claim timely was arbitrary and capricious. Holding the factual conclusion was not clearly wrong, the appellate court affirmed. Shrader, 588 So.2d at 1316.
Likewise, in the instant case, the delay in making the payment was not reasonable because Blue Cross had all of Mr. Crawford's records, which reflected the medical necessity of the hospitalization, long before the payment was made. The fact that the information at the disposal of Blue Cross personnel became lost in the labyrinth of the insurer's various departments does not make its denial reasonable.
The insurer in Shrader did not incur a penalty for the portion of the claim it denied because there existed a serious legal question concerning the applicability of a state statute to the facts of the case. The court noted:
The fact that an issue raised by an insurer is one of first impression is not alone determinative on the issue of sanctions for denying coverage; even if the policy provision has never been litigated before, the risk of erroneous interpretation is that of the insurer, not the insured. On the other hand, the fact that a beneficiary may ultimately be determined to be entitled to policy benefits does not in and of itself justify the invocation of penalties. (Citations omitted.)... While one may argue that defendant took a chance on misinterpreting its policy and the applicable statute, we find that the lack of jurisprudence, taken together with an opinion by the office of the commissioner of insurance, provided a reasonable basis upon which defendant was entitled to rely until such time as the matter was clearly settled, either in this case or another.... [D]efendant was neither arbitrary nor capricious in placing confidence in an erroneous application of the law to the facts by a governmental office charged with the application and enforcement of state laws regarding insurance.
Shrader, 588 So.2d at 1317.
In the instant case, there were no extenuating circumstances justifying the insurer's denial of the claim, such as an issue regarding the applicability of a state statute and an opinion from the commissioner of insurance.
In Hargroder v. Protective Life Insurance Company, 556 So.2d 991 (La.App. 3 Cir.), writ denied, 559 So.2d 1367 (La. 1990), the issue of the propriety of a penalty was resolved by the appellate court on the narrow grounds of failure to plead estoppel. The court specifically withheld an opinion as to how a properly pleaded estoppel might have affected the outcome of the case. Id. at 998.
In Landry v. Travelers Insurance Company, 488 So.2d 379, 382 (La.App. 3 Cir.), writ denied, 491 So.2d 23 (La.1986), treatment by a dentist and an oral surgeon was covered by the policy despite an exclusion of dental coverage because patient's problem was orthopedic rather than dental; no penalty was assessed because the insurer's interpretation of the exclusion was reasonable.
In Posey v. Board of Trustees, State Employees Group Benefits Program, 426 So.2d 705, 709 (La.App. 1 Cir.1982), writ denied, 429 So.2d 139 (La.1983), this court was convinced by the facts that the insurer was not dilatory in investigating the claim and did not place a strained or unreasonable interpretation upon the language of the benefit plan. In the instant case, as we have previously noted, Blue Cross was not diligent in its investigation; further, its insistent reliance on the erroneously coded diagnosis, which was contradicted by the medical records, was not reasonable.
In Hoffpauir v. Time Insurance Company, 536 So.2d 699, 702-704 (La.App. 3 Cir.1988), the trial court found the insurer *517 failed in its burden of proving that the insured's statement concerning prior back problems was made with the intent to deceive. However, the insurer had proved that the statement was false and that the false statement materially affected the risk assumed by the insurer. Thus, the trial court concluded the insurer had just and reasonable grounds such as would put a reasonable and prudent businessman on guard to deny the claim. In the instant case, there was no misrepresentation by the insured and no question at the beginning of his hospitalization that his admittance was medically necessary.
We find the facts of this case, reviewed consistently with the jurisprudence applying LSA-R.S. 22:657, support the trial court's determination that Blue Cross was arbitrary and capricious in failing to pay the claims within the required time frame. These two assignments of error are without merit.

Amount of Attorney's Fee:
Both parties challenge the amount of attorney's fees awarded in the instant case. Blue Cross asserts the attorney's fee should be eliminated entirely or reduced. Mr. Crawford asserts the attorney's fee should be increased to reflect the amount provided in his contract with his attorney and to award a fee for defending the appeal.
As to the amount of the award of attorney's fees, LSA-R.S. 22:657(A) states that the amount is to be determined by the court. While the amount of the attorney's fees is within the discretion of the trial court, some factors to consider are the amount involved, the skill of the attorney, and the amount of work necessarily undertaken by the attorney. Bonura, 552 So.2d at 1255.
Because we have determined the penalty was correctly assessed, we need not discuss the argument of Blue Cross that no attorney's fee is due because no penalty is due.
In its brief, Blue Cross argues the amount of the attorney's fee in the instant case should recompense counsel for Mr. Crawford for his efforts made from the time of the submission of the claim until payment of the claim; he should not be recompensed for his efforts in procuring the penalty. The penalty statute, LSA-R.S. 22:657, was enacted to effect a speedy collection of just claims without diminution and without unnecessary delay and expense. Lopez v. Blue Cross of Louisiana, 397 So.2d 1343, 1345 (La.1981). The intent of the statute is to allow an insured to recover attorney fees when it is necessary to employ an attorney to obtain accrued penalties as well as policy proceeds. Tingle v. Business Men's Assurance Company of America, 353 So.2d 1081, 1083 (La.App. 2 Cir.1977). The argument of Blue Cross that the attorney should not receive a fee for recovery of the penalty, as opposed to procuring payment of the claim, overlooks the reality that a claimant may not be able to procure representation against an insurer who refuses to pay a claim, and especially for small claims without the possibility of a recovery of a penalty plus an attorney's fee. The insurer could delay payment of a claim until payment suited its purposes. The imposition of an attorney's fee in addition to a penalty is a deterrent to an insurer's self-serving dalliance in the payment of a just claim. An insurer has an affirmative duty to verify, through a reasonable investigation, whether the claim was actually excluded from coverage. When, as here, an insurer chooses to resist its contractual obligation based upon a supposed defense, which a reasonable investigation would have proved to be without merit, it acts at its peril and renders itself liable for statutory penalties and attorney's fees. See Savarino v. Blue Cross and Blue Shield of Louisiana Inc., 98-0635, p. 13 (La.App. 1 Cir. 4/1/99), 730 So.2d 1083, 1090.
This assignment of error by Blue Cross is without merit.
*518 Mr. Crawford complains that the attorney's fee award should be increased to reflect the percentage of the recovery agreed to in his contract with his attorney. We disagree. A contingency fee contract is not the basis upon which a court is to determine "reasonable attorney's fees" as that term is used in LSA-R.S. 22:657. See Baghramain v. MFA Mutual Insurance Company, 315 So.2d 849, 854 (La.App. 3 Cir.), writs denied, 320 So.2d 207, 209 (La.1975). Parties to a contract may lawfully obligate themselves for the payment of an attorney fee, but the amount of attorney's fees are subject to review and control by the courts. Although a written agreement may provide for a specified attorney's fee, the courts may inquire into the reasonableness of the fee. Richard v. Broussard, 482 So.2d 729, 734 (La.App. 1 Cir.1985), amended on other grounds, 495 So.2d 1291 (La.1986). For a listing of the non-exclusive criteria for determining the reasonableness of a fee, see Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 219 (La.1982). Although a factor to consider, the use of a percentage of the recovery as a sole criteria is not consistent with the criteria established in the jurisprudence for a determination of the amount of an attorney's fee. See, e.g., Bonura, 552 So.2d at 1255. Thus, we will not adjust the amount of the attorney's fee to reflect the contingent fee agreed to by the plaintiff. See Peters v. Life General Security Insurance Company, 400 So.2d 1103, 1106 (La.App. 1 Cir.), writ denied, 403 So.2d 70 (La.1981) (attorney's fee of $7,500.00 affirmed despite fact a one-third contingent fee would have totaled over $18,000.00).
We find that the sum of $5,000.00 awarded by the trial court in the instant case was adequate. A trial court judge has much discretion in fixing an attorney's fee, and his award will not be modified on appeal absent a showing of an abuse of that discretion. Aetna Finance Company of Baton Rouge v. Perkins, 448 So.2d 121, 126 (La.App. 1 Cir.1984). However, we recognize the additional efforts required of counsel on appeal, especially in a case such as the instant one involving a multitude of issues. Accordingly, we will award an additional $1,200.00 in attorney's fees.

Award of a Single Penalty:
In his answer to the appeal Mr. Crawford urges the trial court should have awarded multiple penalties for multiple violations of LSA-R.S. 22:657.
The language of LSA-R.S. 22:657(A) dealing with the amount of the penalty for failure to pay the claim within 30 days is as follows:
Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court.
As we have previously stated, the statute authorizes the assessment of a penalty that is double the amount of the claim the insurer delayed paying. In the instant case, the parties stipulated that the amount of the claim was $26,030.22. A penalty greater than double the claim is not authorized. Because Blue Cross has paid the amount of the claim to the health care providers, Mr. Crawford is entitled to a penalty award of $26,030.22, or 100 percent of the claim. See Nickels, 563 So.2d at 929, and cases cited therein.
Mr. Crawford cites as authority for his multiple penalty theory the case of Calogero v. Safeway Insurance Company of Louisiana, 99-26 (La.App. 3 Cir. 5/5/99), 735 So.2d 816. The appellate court's ruling in that case was affirmed in part and reversed in part by the Louisiana Supreme Court, Calogero, 99-1625, pp. 8-9 (La.1/19/00), 753 So.2d 170, 175. Because of the trial court's ruling that the insurer did not violate LSA-R.S. 22:1220(B)(1), the supreme court did not address the court of appeal's holding that multiple penalties were permissible. Id. at n. 3. Regardless of the potential issue, Calogero is inapposite to the instant case because the court was interpreting a different penalty statute.
*519 Mr. Crawford has cited no statutory or jurisprudential authority which supports his request for multiple penalties, and we have discovered none. This argument of the appellee is without merit.

Amount of the Penalty:
Our discussion of Mr. Crawford's argument concerning multiple penalties touches upon the issue of the amount of the penalty. We find the trial court's award of 100 percent of the amount owed to the hospitals (now adjusted to reflect the stipulation) is consistent with the well established jurisprudence interpreting LSA-R.S. 22:657. See Nickels, 563 So.2d at 929.
This argument of the appellee is without merit.

CONCLUSION
Accordingly, we amend the judgment to award to Mr. Crawford the sum of $26,030.22 as a penalty, and to award an additional $1,200.00 in attorney's fees. In all other respects, we affirm the judgment of the trial court. We assess Blue Cross with the costs of this appeal.
JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.
CARTER, C.J., concurs.
NOTES
[1] Judge William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] At the trial of this matter, Ms. Thoman gave her name as "Catherine R. Thoman." However, she is referred to as "Cathe" by the parties.
[3] Immediately prior to trial, counsel for plaintiff attempted to withdraw the stipulation concerning the amount in dispute, stating the stipulated amount did not take into account the interest charges the plaintiff was required to pay to the health care providers because of the denial of the claim by Blue Cross.
[4] The record shows Mr. Crawford was admitted to the hospital from the emergency room, where he was taken after contacting 911 following an episode of lost consciousness in a parking lot.
[5] The reference to "lay diagnosis" by the trial court apparently concerns the decision made by Blue Cross personnel after the claims were forwarded to them that hospitalization was for the treatment of mental and nervous disorders.
[6] Plaintiff filed his petition on April 4, 1996.
[7] Additional demands made by Mr. Crawford in his answer to the appeal have been abandoned by agreement of the parties.
[8] In its brief Blue Cross incorrectly gives this date as December 28, 1996.
[9] Although the trial court, in reasons for judgment, and both parties, in the joint stipulation and elsewhere, use the word "appeal" in conjunction with a demand for payment of a claim, this word is not used in such a context in the policy issued to Mr. Crawford. The policy provides for "appeals" of a denial of pre-certification of hospital admissions and extended stays, but not for appeals of denials of payment of benefits. The portion of the policy referenced by Blue Cross in its brief merely requests the insured to direct questions about the payment of claims in writing to the Customer Service Center. The language of this request falls short of an "official policy" for appealing a denial of benefits.