843 So.2d 542 (2003)
Clotiel P. HOUSTON, Plaintiff-Appellee,
v.
BLUE CROSS BLUE SHIELD OF LOUISIANA, Defendant-Appellant.
No. 37,097-CA.
Court of Appeal of Louisiana, Second Circuit.
April 9, 2003.
*544 Sharp, Henry, Cerniglia, Colvin, Weaver & Hymel, L.L.C., by Patrick E. Henry, Susan T. Poole, for Appellant.
Kitchens, Benton, Kitchens & Newell, by Graydon K. Kitchens, III, Paul E. Kitchens, John B. Benton, Jr., for Appellee.
Before BROWN, GASKINS & PEATROSS, JJ.
PEATROSS, J.
In this action against Blue Cross Blue Shield of Louisiana ("BCBS") for failure to timely pay benefits under a Cancer and Serious Disease policy ("CSD policy"), the trial court entered judgment in favor of Plaintiff, Bobby Ray Parker as Administrator of the Succession of Clotiel P. Houston, and against BCBS, awarding $10,100 for claims under the CSD policy; $10,100 in penalties under La. R.S. 22:657; and $10,000 in attorney fees. BCBS appeals, and Mr. Parker has answered the appeal. For the reasons stated herein, we amend the judgment of the trial court and, as amended, affirm.

FACTS
On December 2, 1999, Clotiel Houston was admitted to Minden Medical Center complaining of episodes of "all-over" jerking, right-side weakness and difficulty with speech and gait. The emergency room examination revealed what appeared to be right side focal seizure activity. A CAT scan of her brain showed what Dr. Gerald Stell believed at the time to be evidence of a stroke. Ms. Houston remained in Minden Medical Center until December 5, 1999.
On January 9, 2000, Ms. Houston was found by her family lying on the floor of her apartment, unable to get up or reach the telephone to call for help. She was again admitted to Minden Medical Center suffering from similar symptoms, i.e., seizures and right-side weakness. A second CAT scan showed a right parietal lesion, or tumor; and, on January 13, 2000, Ms. Houston was transferred to Willis-Knighton Medical Center in Shreveport for surgery. A pathology report completed on February 28, 2000, indicated that Ms. Houston had a malignant brain tumor, which may have been a metastatic cancer from an earlier battle with breast cancer. Ms. Houston was discharged from Willis-Knighton on February 8, 2000.
On March 20, 2000, however, she began having seizures again and was re-admitted to Minden Medical Center. On March 23, 2000, Ms. Houston was transferred to an assisted living center where she remained until her death on October 26, 2000.
It is not disputed that there was a BCBS Cancer and Serious Disease Policy in effect during the time of Ms. Houston's *545 treatment in 1999 and 2000. The policy provided benefits of $200 per day for hospital confinement and 50 percent of reasonable and customary health care charges, up to $3,500 per year.
On May 11, 2000, Bobby Ray Parker, Ms. Houston's son, mailed certain documents to BCBS, including a BCBS claim form signed by him, Dr. Stell and the oncologist, Dr. Robert Nickelson; the pathology report generated by Delta Pathology Group; a copy of an itemized bill from Minden Medical Center for Ms. Houston's hospitalizations in the year 2000; and an itemized bill from Willis-Knighton covering the 33-day period of hospitalization in the year 2000. In this correspondence, Mr. Parker advised BCBS that he was Ms. Houston's son and requested that he be contacted should any additional information be necessary to process his mother's claim. Although he did have his mother's power of attorney, Mr. Parker did not include the document with his mailing to BCBS. This mailing was received by BCBS on May 15, 2000.
A BCBS claims processor determined that the May 11th mailing contained insufficient information to process the claim; according to BCBS, certain industry standard codes were not provided, nor was the claim on the correct form. BCBS, however, did not contact Mr. Parker for the needed information. Instead, on or about May 24, 2000, form letters requesting additional information were generated by the BCBS computer system and sent to the providers. This request went unanswered and a second request was made of the providers by BCBS in early June 2000. This request was also unanswered.
Also in June 2000, Mr. Parker telephoned BCBS to inquire about the status of the claim because he had not received any response from the insurance company. A BCBS representative advised Mr. Parker that a UB92[1] form was needed in order to process his mother's claim. Mr. Parker attempted to obtain the UB92 from Dr. Stell's office, but was informed that such document could not be generated because there was a zero balance on his mother's account. An employee of Dr. Stell's office, however, assisted Mr. Parker in obtaining documentation from Minden Medical Center, which they believed contained the necessary codes to process the claim. Accordingly, on June 27, 2000, Mr. Parker sent this additional documentation, including Dr. Stell's records and reports from Minden Medical Center, to BCBS. In this correspondence, he advised BCBS the UB92 could not be generated because "this account has a zero balance." He further advised, as he did in his letter of May 11th, that he was Ms. Houston's son and that she was unable to handle her affairs.
On receipt of Mr. Parker's second mailing, BCBS determined that it still did not have the necessary information to process the claim. Thereafter, BCBS sent additional form letter requests for information to the providers, which were also unanswered. At no time did BCBS attempt to contact Mr. Parker.
On July 27, 2000, Mr. Parker's counsel sent a demand letter to BCBS, which was accompanied by a copy of the Power of Attorney in favor of Mr. Parker and *546 signed by Ms. Houston. This correspondence was received by BCBS on July 31, 2000. At this point, a member of the legal department of BCBS, Ginger Alumbaugh, was assigned to investigate and handle the processing of Ms. Houston's claim. Ms. Alumbaugh, however, was unsuccessful in obtaining the necessary information to process the claim.
Suit was filed on August 15, 2000, alleging that BCBS had failed to make timely payment under La. R.S. 22:657(A). The petitions[2] claimed benefits due as follows:

Year 2000: 33 days in hospital at $200 per day = $6,600 + $3,500 for
 other services = $10,100
Year 1999: 3 days in hospital at $200 per day = $600 + × of $5,385.46
 (health care charges) or $2,692.73 = $3,292.73

Ms. Houston also sought penalties and attorney fees on the 2000 claims.[3]
After suit was filed and Ms. Alumbaugh went on vacation, BCBS assigned BCBS Special Inquiries Representative Jennifer Rogers (self-described "trouble-shooter") to handle the matter. Ms. Rogers reviewed the file and, through telephone calls to the providers, quickly discovered that the providers had failed to supply the necessary information for claims processing because they had been paid in full by Medicare and Ms. Houston's BCBS Medicare supplemental insurance policy. For this reason, the providers, unaware of the existence of a CSD policy, mistakenly believed that no further claims existed. Once Ms. Rogers resolved this misunderstanding, the following checks were issued by BCBS:

9/27/2000  $ 5,619.33
9/28/2000  $ 600
9/5/2001  $ 3,600[4]
None of the above described checks were cashed by Mr. Parker. The sum of the checks is $9,819.33, which is $280.67 short of the benefits claimed by Ms. Houston. As previously stated, Ms. Houston died in October 2000, and Mr. Parker was substituted as plaintiff in December 2000.

ACTION OF THE TRIAL COURT
At trial, BCBS argued that its delay in paying Ms. Houston's claims was just and reasonable because no proper claim had been filed and, despite its efforts, it could not obtain the necessary information to complete the claims process. The trial court disagreed and, in its written opinion, emphatically opined that BCBS's handling of this matter was "inexcusable." The *547 court found clear evidence that her treatment in the year 2000 was due to cancer. Further finding that the delay of nearly four and a half months from receipt of Mr. Parker's first mailing and payment of the claim for 2000 was unjustified and unreasonable, the trial court awarded benefits for that year in the amount sought of $10,100. In addition, it found BCBS's action and inactions to be arbitrary and capricious and assessed a penalty in the amount of $10,100 and awarded attorney fees in the amount of $10,000.
The trial court also found it unbelievable that the BCBS employees had no idea whether the Medicare supplement department coordinated with the medical insurance department; however, BCBS employees testified that one could get all of the information on a BCBS insured by entering the name into the computer. The trial court also noted the lack of evidence that BCBS ever requested a Power of Attorney from Mr. Parker or instructed him on what was necessary to process the claim. Relying on Crawford v. Blue Cross Blue Shield of Louisiana, 99-2503 (La.App. 1st Cir.11/3/00), 770 So.2d 507, writ denied, 00-3267 (La.2/16/01), 786 So.2d 98, the trial court held that it was incumbent on BCBS to respond to Mr. Parker's counsel with instructions for proper submission of the claim. Noting how quickly Ms. Rogers was able to resolve the matter with little effort, the court stated that BCBS did "little or nothing ... other than to write several letters to the providers seeking more information" in more than four months' time.
Finally, regarding the claim for benefits for the 1999 treatment and hospitalization, the trial court found that no benefits were due for 1999 "because there was no showing that there was a pathological diagnosis of cancer as required by the CSD policy."

DISCUSSION
BCBS raises the following assignments of error on appeal:
1. The trial court erred in its conclusion that Blue Cross Blue Shield of Louisiana was without reasonable grounds for failure to pay the claim of Plaintiff/Appellee within 30 days of the submission of materials on May 11, 2000, and/or June 27, 2000.
2. The trial court erred in its conclusion that Blue Cross Blue Shield of Louisiana was unreasonable in its refusal to communicate with Bobby Ray Parker regarding the processing of health care claims of Clotiel P. Houston without legal authority to so act.
3. The trial court erred in its conclusion that Blue Cross Blue Shield of Louisiana failed to take sufficient action to obtain the information necessary to process the claims on behalf of Plaintiff/Appellee, Clotiel P. Houston.
The assignments of error all concern the determination of whether BCBS complied with La. R.S. 22:657, which states, in pertinent part:
§ 657. Payment of claims; health and accident policies; prospective review; penalties; self-insurers; telemedicine reimbursement by insurers
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his *548 disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. Any court of competent jurisdiction in the parish where the insured lives or has his domicile, excepting a justice of the peace court, shall have jurisdiction to try such cases. (Emphasis added.)
This statute was enacted to effect a speedy collection of just claims without diminution and without unnecessary delay and expense. Savarino v. Blue Cross Blue Shield of Louisiana, Inc., 98-0635 (La.App. 1st Cir.4/1/99), 730 So.2d 1083, citing Lopez v. Blue Cross of Louisiana, 397 So.2d 1343 (La.1981). The insurer is entitled to refuse or delay payment if such just and reasonable grounds for refusing or delaying exist. Rippon v. Variable Protection Administrators, Inc., 537 So.2d 262 (La.App. 4th Cir.1988), writ denied, 541 So.2d 833 (La.1989). The issue of whether just and reasonable grounds exist is a question of fact to be decided based upon the facts and circumstances of each case and the trial court's findings, for purposes of determining whether penalties should be imposed, should not be disturbed unless they are clearly wrong. Holland v. Golden Rule Insurance Company, 96-264 (La. App. 3rd Cir.10/9/96), 688 So.2d 1186.
The provisions of La. R.S. 22:657 are penal in nature and are to be strictly construed. Morgan v. Golden Rule Insurance Company, 568 So.2d 184 (La.App. 2d Cir.1990), citing Colville v. Equitable Life Assurance Society of U.S., 514 So.2d 678 (La.App. 2d Cir.1987). Such penalties should not be assessed unless the refusal to pay is clearly arbitrary and capricious. Soniat v. Travelers Insurance Company, 538 So.2d 210 (La.1989).
As previously stated, the trial court in the case sub judice found that the delay in payment by BCBS of more than four months was not justified or reasonable, but was arbitrary and capricious. We find no error in this determination.
Once an insurer has notice that a claim exists, it has a duty to investigate that claim, Crawford, supra, and the burden shifts to the insurer to show just and reasonable grounds for the delay. Nerness v. Christian Fidelity Life Insurance Company, 98-1827 (La.App. 3d Cir.4/21/99), 733 So.2d 146. The CSD policy in the case sub judice provides that payment of benefits will be made to the member (subscriber) "upon receipt by [BCBS], in a form acceptable to [BCBS], of an itemized statement of the charges for the procedures performed, services or supplies used and the diagnosis submitted by the Physician or institution." As previously stated, Mr. Parker's May 11th mailing to BCBS included a BCBS claim form signed by himself and two doctors, the pathology report and itemized bills from both Minden Medical Center and Willis-Knighton. Finding this information to be insufficient, BCBS sent form letters to the providers to obtain additional information rather than contacting Mr. Parker as his letter requested. BCBS argues that it did not contact Mr. Parker because it had no power of attorney indicating that Mr. Parker had authority to conduct Ms. Houston's affairs.[5] Ironically, however, when *549 Mr. Parker telephoned BCBS almost two months later to inquire about the delay, the representative did communicate with him regarding Ms. Houston's claim, advising him that a UB92 form and diagnostic codes were necessary before the claim could be processed. Mr. Parker was then told by Dr. Stell's secretary that a UB92 could not be generated because the account had a zero balance. She did, however, assist Mr. Parker in obtaining the information from the hospital she believed necessary for BCBS to process the claim. Mr. Parker then forwarded this documentation to BCBS again stating in his letter that he was her son and that she could not handle her affairs. Very significantly, he also advised BCBS in this letter of June 27, 2000, that the reason he could not obtain a UB92 was because the balances on his mother's accounts were zero.
Once again, BCBS determined that it still had insufficient information to process the claims; and, once again, BCBS did not contact Mr. Parker to make him aware of this, but sent more form letters to the providers, which went unanswered.
After the suit was filed, sometime at the end of August or the beginning of September, Ms. Rogers was assigned to handle the matter for BCBS. Ms. Rogers testified that she telephoned the providers to find out why they had not responded to any of BCBS's written requests for information. She was told by the providers that, because Ms. Houston's, accounts had a zero balance and because they were unaware of the CSD policy, they believed no further benefits were due. Recall that Mr. Parker informed BCBS in his letter of June 27, 2000, that he could not obtain the requested form from the provider because the balance on his mother's account was zero. Yet, it took another month and a half for a representative of BCBS to place a telephone call to the providers and discover that this was the problem and obtain what she stated to be the correct form and information. There is no dispute that, once Ms. Rogers received the form she sought, the claims were paid promptly.
Mr. Parker places great weight on the fact that Ms. Houston's Medicare supplement policy was a BCBS policy and he submits, therefore, that BCBS had the information necessary to process the claims on the CSD policy from the claims filed on the Medicare supplemental policy. BCBS employees testified that putting Ms. Houston's name into the computer would bring up all information about all policies and claims which she had made, including claims and payments made on the Medicare supplemental policy. These same employees also testified that there was no coordination between "their side" of BCBS and the Medicare supplement department. Ms. Rogers testified, however, that what is required for processing a claim on a Medicare supplemental policy is a Medicare Explanation of Benefits ("EOB") which does not contain the specific revenue, procedure and diagnosis codes required for processing a claim on the CSD policy. She stated, therefore, that, while BCBS received an EOB and may have paid a claim under Ms. Houston's Medicare supplemental policy, even with the EOB it would not have had enough information to process a claim under the CSD policy. We, nonetheless, agree with the trial court that, had BCBS actively investigated the claims under the CSD policy, it would have discovered that it had received a Medicare *550 EOB indicating that Medicare had paid in full the balances of Ms. Houston's accounts for 2000, which meant that nothing was due from BCBS on the Medicare supplemental policy.[6] This was a second, very simple means for BCBS to discover that the providers had been paid in full and that that was the reason they were not responding to additional requests for information.
The case sub judice is a striking example of a diligent, competent insured (son representing the insured) attempting to make a proper claim with the insurance company. Once it was in receipt of Mr. Parker's June 27th mailing, BCBS had in its possession every possible medical record and form available to Mr. Parker concerning his mother's diagnosis, treatment and hospitalization for cancer. At this point, BCBS certainly had sufficient notice and proof of a claim under the CSD policy. Indeed, Ms. Rogers testified that no new information was received by BCBS, only the form of the information was different.
Even if BCBS did not have the form (UB92) necessary to process the claim, as previously mentioned, Mr. Parker's letter of June 27, 2000, clearly states why such form was unavailable and the receipt of a Medicare EOB indicating that the providers had been paid in full should have alerted BCBS to the problem, which could have been (and eventually was) quickly resolved through a telephone call to the providers. As the trial court stated, it is "inexcusable" that it then took another two months for Ms. Rogers to get involved and make this discovery, get the forms from the providers and process the claims.
BCBS would have us accept the notion that Mr. Parker's inadequate mailings, followed by the providers' failure to respond to several form letters requesting more information, provides just and reasonable grounds to delay the processing of the claims for more than four months. For the reasons outlined above, we disagree.
Further, BCBS stands behind the shield of confidentiality to argue that it could not contact Mr. Parker regarding Ms. Houston's claim because it did not have a power of attorney in its possession. We find this argument to be disingenuous when, admittedly, a BCBS representative did in fact discuss the status of Ms. Houston's claim with Mr. Parker when he called to inquire about the delay in payment. BCBS did not request a power of attorney during that conversation, nor did it contact Mr. Parker at any other time to request the same, despite his written request that BCBS contact him for any further necessary information.
An insured cannot be charged with having knowledge of the intricate maze of interdepartmental requirements of the insurance company. Crawford, supra. If correspondence is insufficient for submission of a claim, it is incumbent on the insurer to respond with proper instructions for proper submission of the claim. Id. Mr. Parker did his best to provide the information in the form necessary to process the claims and we believe he would have done more had he been requested to do so. BCBS's poor handling of this matter supports the trial court's finding that its failure to timely pay the claims was arbitrary and capricious; and, therefore, we find no error in the trial court's imposition of penalties and attorney fees.

ANSWER TO APPEAL
Mr. Parker has answered the appeal, asserting the following assignments of error:

*551 1. The trial court erred in failing to award any sums to Plaintiff for the hospitalization of his mother during the month of December 1999, despite the BCBS policy of insurance being in full force and effect and coverage for such confinement being owed.
2. The trial court erred in failing to award attorney fees against BCBS in the full amount shown to have been due despite the evidence produced by Plaintiff in support of his demands.
Mr. Parker further argues in his brief that BCBS's appeal is frivolous and without merit warranting an additional imposition of penalties and attorney fees. Finally, also in his brief, Mr. Parker seeks additional attorney fees for the work performed on this appeal.

Benefits for 1999
The CSD policy states that "[n]o Health Care benefits shall be payable for treatment of Cancer unless there is a pathological diagnosis of Cancer." As previously stated, the trial court found that no benefits were owing for 1999 "because there was no showing that there was a pathological diagnosis of cancer as required by the CSD policy." After reviewing the testimony and documentary evidence, we find this conclusion to be clearly wrong.
The record contains a pathology report from Delta Pathology Group on specimens collected from Ms. Houston's brain on January 17, 2000. It is not disputed that the report indicates the tumor was cancer. We acknowledge that, when Ms. Houston first presented at Minden Medical Center on December 2, 1999, suffering from seizures and right-side weakness, Dr. Stell believed she had suffered a stroke and treated her accordingly. At that time, he believed the lesion on her brain that was apparent on the CAT scan to be a stroke. Dr. Stell, accepted by the trial court as an expert in family practice with the competency to make diagnoses of cancer, testified, however, that the second CAT scan, done in January 2000, revealed the tumor in the same location as the lesion on the December 1999 CAT scan and her January 2000 symptoms of seizure, right-side weakness and difficulty with speech and gait were the same symptoms she had experienced a month earlier. For these reasons, in retrospect, he concluded that her problems in 1999 were caused by the cancerous brain tumor. The only reasonable conclusion from this evidence is that the December 1999 treatment and hospitalization were, in fact, caused by the cancer. We find that the January 2000 pathology report, coupled with Dr. Stell's testimony, satisfies the condition that a "pathological diagnosis of cancer" exists for 1999. The judgment shall be amended accordingly to award benefits in the amount of $3,292.73 for 1999.[7] No penalty or attorney fees, however, are warranted on the 1999 claims.

Attorney fees
Mr. Parker argues that the trial court erred in not awarding the full amount of attorney fees requested and proved. The total time requested was presented to the court with expert testimony from retired court of appeal Chief Judge Charles A. Marvin attesting to the reasonableness of those fees. Mr. Parker requests that the award for attorney fees be increased to $15,000.
La. R.S. 22:657 specifies that, where penalties and attorney fees are *552 awarded, the amount of attorney fees is to be determined by the court. Factors to be considered in awarding attorney fees include the knowledge and skill of the attorneys involved, the complexity of the issues inherent in the case, the amount of the controversy and the success of the party seeking the attorney fee. Morgan, supra, citing Goff v. John Hancock Mutual Life Insurance Company, 497 So.2d 747 (La. App. 3rd Cir.1986). The assessment of attorney fees is a factual determination to be made by the trial court and will not be disturbed on review unless shown to be clearly wrong. Morgan, supra, citing Lucito v. Louisiana Hospital Service Inc., 392 So.2d 700 (La.App. 3rd Cir.1980), and Slay v. Old Southern Life Insurance Company, 498 So.2d 1129 (La.App. 3rd Cir. 1986), writ denied, 501 So.2d 235 (La. 1987).
In the case sub judice, the trial court was presented with the evidence and testimony regarding the suggested reasonable and appropriate attorney fees in this matter. In its discretion, the trial court evaluated the evidence and awarded $10,000 in attorney fees. We cannot say that the trial court was clearly wrong in this exercise of discretion; and, therefore, we decline to increase the award on appeal.
Mr. Parker next asserts that BCBS's appeal is frivolous and requests that this court award penalties and attorney fees accordingly. La. C.C.P. art. 2164 provides that this court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable. An appeal is not automatically deemed frivolous simply because it lacks merit. LePrettre v. Progressive Land Corp., 01-1660 (La.App. 3d Cir.6/19/02), 820 So.2d 1240. Rather, appeals are favored and an appeal is deemed frivolous, for purposes of an award of damages for frivolous appeal, only if it does not present substantial legal question; or if it is obvious either that its sole purpose is delay, or that appealing counsel does not seriously believe the view he or she has advocated. Hays v. Volentine, 29,555 (La.App.2d Cir.5/7/97), 694 So.2d 633; Joyner v. Wear, 27,631 (La.App.2d Cir.12/6/95), 665 So.2d 634, writs denied, 96-0040 and 96-0042 (La.2/28/96), 668 So.2d 370; Fudge v. Levine, 26,279 (La.App.2d Cir.12/7/94), 647 So.2d 405.
BCBS presented well-grounded arguments based on the factual determinations of the trial court. We do not find this appeal to be frivolous so as to warrant the imposition of a penalty and attorney fees.
Mr. Parker is, however, entitled to an increase in the attorney fees award for the work performed on appeal. The general rule is an increase in attorney fees is usually allowed where a party was awarded attorney fees by the trial court and is forced to and successfully defends an appeal. Sims v. Sun Chemical Corp., 34,947 (La.App.2d Cir.8/22/01), 795 So.2d 439; Fontenot v. Flaire, Inc., 26,055 (La.App.2d Cir.8/17/94), 641 So.2d 1062. Stated another way, an increase in attorney fees for services rendered on appeal is appropriate when the defendant appeals and obtains no relief. Wallace v. State Farm Mutual Automobile Insurance Company, 36,099 (La. App.2d Cir.6/14/02), 821 So.2d 704.
Mr. Parker requested an increase in attorney fees for work performed on appeal in his timely answer to the appeal. His attorney filed a brief supporting the trial court's judgment in part and raising an error in the judgment, which we found to be meritorious. He also presented oral argument before this court. We find that Mr. Parker is entitled to an award of additional attorney fees in the amount of *553 $2,500.00 representing legal services required by this appeal.

DECREE
For the reasons stated herein, the judgment of the trial court is amended to add benefits for 1999 in the amount of $3,292.73. In addition, the award of attorney fees is amended to include an additional award of $2,500 in attorney fees for work on this appeal. As amended, the judgment of the trial court is affirmed. Costs are assessed to Defendant/Appellant Blue Cross Blue Shield of Louisiana.
AMENDED, AND, AS AMENDED, AFFIRMED.
NOTES
[1] A UB92 is a standard claim form used by hospitals to file claims with insurance companies. A different form is used by physician providers. Both forms, however, contain certain industry standard codes utilized by insurance companies in the processing of claims. Among these codes are revenue codes, diagnostic codes and procedure codes which allow the insurance company to determine which services are covered or excluded under a given policy.
[2] The original petition sought benefits for the year 2000 only. By supplemental petition, Mr. Parker claimed benefits owing for his mother's hospitalization and treatment in 1999.
[3] Penalties and attorney fees were not sought for the 1999 hospitalization and treatment because no claim for benefits was made to BCBS for that year.
[4] This payment was made over a year after the first two payments. Apparently, in September 2000, when Ms. Rogers requested information from the providers on all cancer-related treatment of Ms. Houston, the last 18day hospitalization in Willis-Knighton was not included in the materials sent to her because this confinement was for rehabilitation and was not "coded" as cancer-related in the hospital records. Once this potential claim was brought to her attention, Ms. Rogers secured the hospital records on this 18-day stay and referred the matter to the BCBS medical review team to determine if coverage existed for this confinement. The medical review team determined that, even though the "code" for cancer was absent from the records, the rehabilitation was a result of the cancer and was, therefore, covered. Ms. Rogers then issued this final benefit check.
[5] In fact, the claims processor who first saw Mr. Parker's mailing testified in deposition that she would not have been concerned with, or even read, Mr. Parker's letter because it was her job to merely enter code information into the computer, which then generated the letter to the provider requesting additional information. She stated that it was not her job to read the correspondence and investigate the claim.
[6] BCBS did pay $798 on the Medicare Supplemental policy for 1999.
[7] This figure represents three days hospitalization at $200 per day ($600) plus 50 percent of Dr. Stell's and Minden Medical Center's charges ($326.16 + $5,149.30 = $5,385.46 ×.50 = $2,692.73) for a total of $3,292.73.