552 So.2d 1248 (1989)
Carlo J. BONURA and Ann M. Bonura
v.
UNITED BANKERS LIFE INSURANCE COMPANY and Hill Country Life Insurance Company.
No. 88 CA 1423.
Court of Appeal of Louisiana, First Circuit.
November 14, 1989.
Writ Denied February 2, 1990.
*1249 Sumpter B. Davis, III, Jeff C. Calmes, Baton Rouge, for plaintiffs-appellees Carlo J. Bonura and Ann M. Bonura.
Charles W. Nelson, Jr., New Orleans, for defendant-appellant Texas Receiver of United Bankers Life Ins. Co.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
This case arose from a claim for benefits under a policy of health and accident insurance.

FACTS
On November 21, 1980, United Bankers Life Insurance Company (United Bankers) issued a policy of health and accident insurance covering Carlo J. and Ann M. Bonura.[1] The policy provided benefits for specific dread diseases, including cancer, in the amount of $100,000.00. On March 8, 1982, Ann Bonura was diagnosed as having infiltrating ductal carcinoma of the left breast. Thereafter, the Bonuras made periodic claims upon United Bankers for the costs of the treatment received by Ann Bonura. United Bankers denied coverage on the basis that the cancer was a preexisting condition and that the claims were for outpatient treatment, neither of which were covered by the policy.
In October of 1982, United Bankers was placed in receivership in Texas. By order dated April 12, 1983, Hill Country Life Insurance Company (Hill Country) assumed certain obligations of United Bankers. Thereafter, the Bonuras made claims for benefits upon Hill Country, which were denied.
On March 19, 1984, the Bonuras filed suit for damages against United Bankers and Hill Country.[2] Thereafter, the Bonuras added, as defendants, Anthony G. Harris, temporary receiver for United Bankers, and Life, Accident, Health, and Hospital Service Insurance Guaranty Association (IGA), an entity created by the Texas Insurance Code. Harris filed a declinatory exception pleading the objection of lack of *1250 jurisdiction over the subject matter. IGA filed peremptory and declinatory exceptions pleading the objections of no cause of action and lack of personal and subject matter jurisdiction, respectively.
The trial court denied the exceptions, finding that the claims against Harris and IGA were subject to the jurisdiction of the Louisiana courts. Harris and IGA applied to this court for writs of certiorari, which were granted, to consider whether Louisiana had jurisdiction over a Texas statutory entity and a Texas receiver in a claim by Louisiana residents against a foreign insurer placed in receivership in Texas. In Bonura v. United Bankers Life Insurance Company, 509 So.2d 8 (La.App. 1st Cir. 1987), writ denied, 512 So.2d 462 (La. 1987), this court determined that Louisiana had subject matter jurisdiction of the controversy, but that Louisiana did not have in personam jurisdiction over IGA. This court noted that Harris failed to except to Louisiana's in personam jurisdiction, thereby waiving any such objection. Accordingly, IGA was dismissed from the suit.
The matter proceeded to trial against United Bankers and Harris. Prior to trial, however, Carlo J. and Ann M. Bonura died. Donna Bonura Lensing, representative of the succession of the Bonuras, was substituted as party plaintiff. After trial, the trial court rendered judgment in favor of Donna Bonura Lensing and against United Bankers and Harris for $92,361.76 in medical benefits, $184,723.52 in penalties, and $25,000.00 in attorney's fees, together with legal interest from date of judicial demand[3] and all costs.
From this adverse judgment, United Bankers and Harris appeal, assigning the following errors:
1. The Trial Court erred in assuming jurisdiction of the subject matter of this suit.
2. The Trial Court erred in refusing to give full faith and credit to the judgment of the Texas court.
3. The Trial Court erred in refusing to honor the judgment of the Texas Court as a manner of comity.
4. The Trial Court erred in holding that the plaintiff's claims were covered by the policy.
5. The Trial Court erred in awarding penalties and attorney's fees.
6. The attorneys' fees awarded by the Trial Court were excessive.

ASSIGNMENTS OF ERROR NOS. 1, 2, & 3

(Jurisdiction)
In these assignments of error United Bankers and Harris contend that Louisiana courts lack jurisdiction over this matter under the provisions of the Uniform Insurers Liquidation Acts, LSA-R.S. 22:757, et seq. United Bankers and Harris reason that LSA-R.S. 22:760 B requires Louisiana residents to assert their claims in the proceedings of the domiciliary state of the foreign insurer when no receivership proceedings have been initiated in Louisiana. United Bankers and Harris also contend that, in Texas state court proceedings, the receiver was given exclusive jurisdiction over the assets of United Bankers and an injunction was issued, enjoining all persons from asserting any claim against United Bankers or Harris except in the receivership proceedings. United Bankers and Harris reason that the trial court erred in not giving full faith and credit to the Texas court judgment pursuant to the full faith and credit clause of the constitution or under the doctrine of comity.
As noted earlier, prior to trial, this court addressed the issue of subject matter jurisdiction *1251 in Bonura v. United Bankers Life Insurance Company, supra. When this court considers questions in advance of trial by granting a pretrial application for supervisory writs (rather than deferring judgment until an appeal), the determination does not absolutely preclude a different decision on appeal, at which time the issues may have been more clearly framed by the evidence adduced at trial. Nevertheless, judicial efficiency demands that this court accord great deference to its pretrial decisions, unless it is apparent, in light of the subsequent trial record, that the determination was clearly wrong. See State v. Humphrey, 412 So.2d 507 (La. 1981).
In Bonura v. United Bankers Life Insurance Company, supra, this court stated:
Section 760, entitled "Claims against foreign insurers," provides as follows:
A. In a delinquency proceeding in a reciprocal state against an insurer domiciled in that state, claimants, against such insurer, who reside within this state may file claims either with the ancillary receiver, if any, appointed in this state, or with the domiciliary receiver. All such claims must be filed on or before the last date fixed for the filing of claims in the domiciliary delinquency proceeding.
B. Controverted claims belonging to claimants residing in this state may either (1) be proved in the domiciliary state as provided by the law of that state, or (2) if ancillary proceedings have been commenced in this state, be proved in those proceedings. In the event that any such claimant elects to prove his claim in this state, he shall file his claim with the ancillary receiver in the manner provided by the law of this state for the proving of claims against insurers domiciled in this state, and he shall give notice in writing to the receiver in the domiciliary state, either by registered mail or by personal service at least forty days prior to the date set for hearing. The notice shall contain a concise statement of the amount of the claim, the facts on which the claim is based, and the priorities asserted, if any. If the domiciliary receiver, within thirty days after the giving of such notice, shall give notice in writing to the ancillary receiver and to the claimant, either by registered mail or by personal service, of his intention to contest such claim, he shall be entitled to appear or to be represented in any proceeding in this state involving the adjudication of the claim. The final allowance of the claim by the courts of this state shall be accepted as conclusive as to its amount, and shall also be accepted as conclusive as to its priority, if any, against special deposits or other security located within this state.
[Emphasis added.]
We find Section 760 to be inapplicable here. This section does not stand alone in our statutes, but is one of the seven sections of Title 22 which comprise the Uniform Insurers Liquidation Law. As stated in Section 763, this law "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states that enact it." [Emphasis added.] Each section contains one or more times the phrase "reciprocal state," which is defined in Section 757(7) as "any state other than this state in which in substance and effect the provisions of this law are in force, including the provisions requiring that the insurance commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer." As shown by the Table of Jurisdictions immediately following Section 757 in which the Act has been adopted, Texas is not a reciprocal state. Therefore, the provisions of the Uniform Insurers Liquidation Law, and specifically Section 760, cannot be applicable in this instance. See Martin v. General American Casualty Company, 226 La. 481, 76 So.2d 537 (1954).
However, two other sections of the Insurance Code do apply to this situation. La.R.S. 22:629 provides that no insurance contract delivered or issued for delivery *1252 in this state which covers Louisiana residents may contain any provision which deprives the courts of this state of jurisdiction of action against the insurer. The jurisprudence construing and applying this statute is both consistent and too voluminous to require citation. Together, the statute and cases announce the unequivocal policy of this state that no foreign insurer may enjoy the benefits of a source of business in this state without being prepared to answer any claims based on that business by a Louisiana resident in the Louisiana courts. This policy comports with due process requirements and the insurer suffers no undue hardship thereby. We find no sufficient reason to abrogate that policy here.
Moreover, La.R.S. 22:1021 and 1022 require that all foreign insurers deposit $20,000.00 in cash or U.S. bonds in a bank or savings and loan association within the state, for the purpose of payment of claims based upon policies on the life, person, or property of any Louisiana citizen. It necessarily follows that for these deposits to be utilized in the manner intended, our courts must have jurisdiction over the claims presented to determine claimants' entitlement to these funds. (footnotes omitted) [509 So.2d 10-11].
After carefully reviewing the pertinent facts and applicable jurisprudence, we cannot say that our pretrial determination that Louisiana had subject matter jurisdiction of the instant controversy was clearly wrong.
Additionally, full faith and credit and the doctrine of comity requires that Louisiana recognize the Texas court judgment, unless by doing so we would violate the positive law or public policy of our own state. See Succession of Fisher, 235 La. 263, 103 So.2d 276 (1958); Succession of Goss, 304 So.2d 704 (La.App. 3rd Cir.1974), writ denied, 309 So.2d 339 (La.1975), cert. denied, 423 U.S. 869, 96 S.Ct. 133, 46 L.Ed.2d 99 (1975).
In the instant case, our positive law, as well as public policy, favors this state's refusal to recognize the Texas court's judgment requiring that the instant claim be litigated in Texas. As noted earlier, the law and public policy of Louisiana states that no foreign insurer may enjoy the benefits of issuing or delivering policies in this state without being subject to suit in this state. Clearly, the trial judge did not err in refusing to give full faith and credit to the Texas court judgment.

ASSIGNMENT OF ERROR NO. 4

(Policy Exclusions)
United Bankers and Harris contend that the medical expenses incurred by the Bonuras were not covered by the insurance policy. United Bankers and Harris reason that Ann Bonura was treated for a preexisting condition, which was specifically excluded, and, as such, any medical expenses incurred for the treatment of said condition are not covered by the policy. United Bankers and Harris further reason that if a disease manifests itself before the effective date of the policy in such a manner as would cause an ordinarily prudent person to seek diagnosis, care, or treatment, then the disease is said to have begun before issuance of the policy, citing Dear v. Blue Cross of Louisiana, 511 So.2d 73 (La.App. 3rd Cir.1987), Moncrief v. Blue Cross-Blue Shield of Arkansas, 472 So.2d 299 (La. App. 3rd Cir.1985), and Smith v. Republic National Life Insurance Company, 335 So.2d 739 (La.App. 2nd Cir.1976), writ refused, 338 So.2d 706 (La.1976).
Their reliance on these cases, however, is clearly misplaced. In Moncrief v. Blue Cross-Blue Shield of Arkansas, supra, the insurance policy specifically defined a condition or disease which existed prior to the effective date of the policy as "one which caused symptoms or other manifestations prior to such effective date in such a manner as would cause an ordinarily prudent person to seek diagnosis, care, or treatment." In Moncrief, by plaintiff's own admission, the symptoms of her subsequently diagnosed condition manifested themselves three to five months prior to the effective date of the insurance policy in such a manner as would cause an ordinarily prudent person to seek diagnosis, care, *1253 or treatment. Plaintiff's condition preexisted the effective date of the policy, and the policy exclusion was upheld.
Likewise, in Dear v. Blue Cross of Louisiana, supra, the language of the insurance policy specifically excluded coverage for "any ailment, disease, or physical condition, the symptoms of which, or the presence of any ailment, disease, or physical condition ... whether or not producing symptom, exhibited themselves before the Member's Original Effective Date regardless of whether the diagnosis, the condition or the disease has been established." Because the plaintiff manifested symptoms prior to the effective date of the policy, under the language of the policy, plaintiff's condition was excluded.
In Smith v. Republic National Life Insurance Company, supra, the plaintiff had suffered from medical problems and had undergone surgery for these problems prior to the effective date of the policy. However, the surgery had not completely resolved plaintiff's ailment, and she had been advised, prior to the effective date of the policy, to undergo additional surgery. The policy covered sickness or disease "which first manifests itself while this policy is in force." Because the medical evidence showed that plaintiff's condition manifested itself prior to her application for insurance, no coverage was afforded under the policy.
In the instant case, the United Bankers' policy covered expenses incurred as a result of "sickness, illness or disease contracted and beginning while ... [the] policy is in force." The policy also contained the following specific exclusions, exceptions, and limitations:
2. Subject to the (b) portion of the Time Limit on Certain Defenses provisions of this policy, pulmonary disease, heart disease, disease of the generative organs, cancer, hernia, high or low blood pressure, arteriosclerosis, aneurysms, varicosities, anemia, colitis, leukemia, nephritis, cholecystitis, prostatitis, cirrhosis, cystitis, disease of the stomach or any sickness which results in a surgical operation shall be covered only if contracted and commencing after this policy has been in force for not less than fifty-nine days from its Effective Date.
Portion (b) of the "Time Limit on Certain Defenses" provisions of the policy provided:
(b) No claim for loss incurred after two (2) years from the date of issue of this Policy shall be reduced or denied on the grounds that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this Policy.
In the instant case, the effective date of the policy was November 21, 1980. Ann Bonura's medical history revealed that she first sought medical attention on March 4, 1982. At that time she reported that she had had an inverted nipple for the past two years. Approximately one year before she sought medical attention, Ann Bonura developed a lesion in the upper, outer quadrant of her left breast. Thereafter, she developed a mass in her left breast.
Dr. Joseph Nasca, general practitioner and surgeon, examined Ann Bonura on March 4, 1982. Dr. Nasca's examination revealed a suspected carcinoma of the left breast, which was confirmed by a biopsy on March 8, 1982. Dr. Nasca, however, testified that he did not know when Ann Bonura's cancer began. Although Dr. Nasca acknowledged that an inverted nipple is sometimes a symptom of cancer, he testified that many women without carcinomas have inverted nipples. Dr. Nasca testified that Ann Bonura's carcinoma of the left breast was first diagnosed on March 4, 1982. He opined, however, that it would be pure speculation to estimate when the carcinoma may have begun.
Dr. Nasca testified that chest x-rays and blood tests performed in November, 1981, were negative for any carcinoma. Dr. Nasca opined that if the carcinoma had existed at that time, the test results and x-rays should have revealed such, especially since the same tests performed in March of 1982 were positive for carcinoma. Dr. Nasca also acknowledged that Ann Bonura's carcinoma was an aggressive one, which could *1254 have developed between November of 1981 and March of 1982.
The courts impose a strict burden on the insurer to prove by a preponderance of evidence that an exclusionary clause is applicable and, in the case of a health policy, that the alleged preexisting condition did in fact predate the effective date of the policy. Cheramie v. Board of Trustees, State Employees Group Benefit Program, 482 So.2d 742 (La.App. 1st Cir.1985), writ denied, 486 So.2d 734 (La.1986); Casey v. Proprietors Life Assurance Company, 470 So.2d 339 (La.App. 5th Cir.1985); Estate of Borer v. Louisiana Health Service & Indemnity Company, 431 So.2d 49 (La. App. 1st Cir.1983). See Lapeyrouse v. Pilot Life Insurance Company, 369 So.2d 1128 (La.App. 1st Cir.1979). The evidence must be "certain and decisive, leaving no room for speculation or assumption." McCord v. Time Insurance Company, 521 So.2d 558 (La.App. 1st Cir.1988); Dorsey v. Board of Trustees, State Employees Group Benefits Program, 482 So.2d 735 (La.App. 1st Cir.1985), writs denied, 486 So.2d 735, 736 (La.1986). Further, the factual findings of the trial court will not be disturbed on review absent manifest error.
After reviewing the entire record under the appropriate standard, we find that the trial court did not err in finding that United Bankers and Harris failed to establish the applicability of the policy exclusion for a preexisting condition.

ASSIGNMENTS OF ERROR NOS. 5 & 6

(Statutory Penalties)
United Bankers and Harris contend that the trial court erred in awarding penalties and attorney's fees. United Bankers and Harris reason that the refusal to pay the medical benefits was reasonable in light of the medical reports furnished by Ann Bonura's physician, indicating that she had an inverted nipple for two years before she received treatment. Additionally, United Bankers and Harris contend that the award of attorney's fees was excessive.
LSA-R.S. 22:657 provides that claims arising under health and accident insurance contracts must be paid within thirty days of the date of receiving proof of claim unless "just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist." Failure to comply subjects the insurer to a penalty of double the benefits due under the policy plus attorney's fees "to be determined by the court."
The statutory language is clear and unambiguous. Whenever a claim is properly presented under a health and accident contract, it must be paid within 30 days, unless just and reasonable grounds exist, such as would put a reasonable and prudent businessman on his guard that the claim is unjust. Lopez v. Blue Cross of Louisiana, 397 So.2d 1343 (La.1981); Cheramie v. Board of Trustees, State Employees Group Benefit Program, supra; Casey v. Proprietors Life Assurance Company, supra. What constitutes just and reasonable grounds for failing to pay has been held to be a question of fact to be determined from the circumstances of the case in question. Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984).
Where an insurer's interpretation of its policy is reasonable and not contrary to any existing jurisprudence, the denial of a claim is not arbitrary so as to require the imposition of penalties, and the insurer has a right to a judicial determination of the issues. While a court may disagree with the interpretation the insurer places upon its policy, its actions in refusing to pay should not necessarily subject it to the penalty provisions of the statute. Landry v. Louisiana Hospital Service, Inc., supra. However, when an insurer chooses to resist liability based on a supposed defense, which a reasonable investigation would have proved to be without merit, it will be liable for statutory penalties. Cheramie v. Board of Trustees, State Employees Group Benefit Program, supra; Lapeyrouse v. Pilot Life Insurance Company, supra; Matthews v. Coastal States Life Insurance Company, 291 So.2d 475 (La. App. 3rd Cir.1974).
*1255 Applying these rules to the instant case, we find that the trial court did not err in finding that United Bankers' and Harris' failure to pay the claim was without just and reasonable grounds. United Bankers and Harris did not investigate whether the carcinoma existed prior to the effective date of the policy. United Bankers or Harris did not ascertain, through consultations with Dr. Nasca or any other means, if Ann Bonura's carcinoma existed prior to the effective date of the policy; each merely relied on Ann Bonura's medical history revealing possible symptoms of cancer. As such, we find that the trial court properly determined that United Bankers and Harris did not act reasonably in refusing to pay the Bonuras' claim.
As to the amount of the award of attorney's fees, LSA-R.S. 22:657(A) states that the amount is to be determined by the court. While the amount of the attorney's fees is within the discretion of the court, factors to consider include the amount involved, the skill of the attorney, and the amount of work necessarily undertaken by the attorney. Cheramie v. Board of Trustees, State Employees Group Benefits Program, supra; Naquin v. Air Engineered Systems & Services, Inc., 463 So.2d 992 (La.App. 3rd Cir.1985), writ denied, 465 So.2d 735 (La.1985); Dowden v. Commonwealth Life Insurance Company, 407 So.2d 1355 (La.App. 3rd Cir.1981).
After reviewing the record, and in accordance with the foregoing factors, we conclude that an award of $25,000.00 is not excessive.

CONCLUSION
For the above reasons, the trial court judgment is affirmed in all respects. United Bankers and Harris are cast for all costs.
AFFIRMED.
NOTES
[1] It is undisputed that, at all times pertinent hereto, the premiums were paid in full, and the policy was in full force and effect.
[2] By order dated August 6, 1984, the Bonuras voluntarily dismissed Hill Country, specifically reserving all rights against the remaining defendants.
[3] In the petition, the Bonuras only requested interest from the date of judicial demand. Under LSA-C.C.P. art. 1921, the court shall award interest in the judgment as prayed for or as provided by law. Generally, interest on insurance contracts commences to run from due date. However, in Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1st Cir. 1984), this court noted that for certain types of claims, a court may only award legal interest in the judgment as it is prayed for. See also Larry L. Johnson v. Southern University and Department of State Civil Service, 551 So.2d 1348 (La. App. 1st Cir.1988); Toth v. Ensco Environmental Services, Inc., 546 So.2d 188 (La.App. 1st Cir. 1989); Sharp v. Daigre, 545 So.2d 1063 (La.App. 1st Cir.1989).