898 So.2d 369 (2005)
ALL STAR ADVERTISING AGENCY, INC. d/b/a All Star Automotive Group
v.
RELIANCE INSURANCE COMPANY, In Liquidation.
No. 2004-C-1544.
Supreme Court of Louisiana.
April 12, 2005.
*370 Deutsch, Kerrigan & Stiles, LLP, Joseph L. McReynolds, Ambrose Victor McCall, Beverly Ann Aloisio, New Orleans, for Applicant.
McKay, Williamson, Lutgring, & Cochran, LLC, Michael Wendell McKay, Baton Rouge, for Respondent.
Patricia Turner Riddick, Baton Rouge, for Robert Wooley, Louisiana Commissioner, Louisiana Department of Insurance, Amicus Curiae.
Richard Abelard Cozad, John Richard Fitzgerald, Michael Leever McAlpine, New Orleans, for McApline & Cozad, PLC, Amicus Curiae.
CALOGERO, Chief Justice.
Uniformity and predictability in interstate relations regarding insurer delinquency and liquidation proceedings has been the objective of two model laws on the topic: the Uniform Insurers Liquidation Act (UILA) proposed in 1939 by the National Conference of Commissioners on Uniform State Laws, and the superseding Insurers Rehabilitation and Liquidation Model Act proposed in 1978, and since amended, by the National Association of Insurance Commissioners. The issue of subject matter jurisdiction in this case turns on the reciprocity between a state, Louisiana, that has adopted the UILA, and a state, Pennsylvania, that has adopted a version of, or laws related to, the Model Act. After consulting a table of UILA  adopting jurisdictions provided as an annotation to West's LSA  Revised Statutes, the court of appeal below ruled that Pennsylvania, the domiciliary state of the delinquent insurer, was not a reciprocal state vis-a-vis Louisiana under Louisiana's Uniform Insurers Liquidation Law, La.Rev.Stat. 22:757 through 22:763, this state's version of the UILA.
*371 We granted the writ application of the Insurance Commissioner of the Commonwealth of Pennsylvania, as Liquidator for Reliance Insurance Company, to determine the correctness of that ruling. Upon review, we set forth the manner in which reciprocity should be determined under Louisiana law and, having done so, we hold that Pennsylvania is a "reciprocal state" under the definition set forth in La.Rev.Stat. 22:757(7). Accordingly, for the reasons provided below, the decision of the court of appeal is reversed and the matter is remanded to that court for consideration of the plaintiff's unaddressed assignment of error asserted in the court of appeal.

FACTS
According to its Petition for a Temporary Restraining Order and for a Rule for Preliminary Injunction, Plaintiff, All Star Advertising Agency, Inc., d/b/a All Star Automotive Group, in December 1996 purchased policies of automobile liability coverage and workers' compensation coverage from Defendant, Reliance Insurance Company, through its wholly-owned subsidiary, United Pacific Insurance Company. The policies were in effect through December 15, 1999. In connection with the policies acquired in December 1996, the parties entered into a Retrospective Premium Endorsement plan whereby All Star would pay Reliance an estimated standard premium that would be adjusted through periodic audits to determine the actual standard premium. The premium could be further adjusted as the result of losses up to 140% of the audited standard premium. As part of the agreement, and to secure its obligation, All Star established a letter of credit with Bank One, a Louisiana bank, effective February 21, 2000, in the amount of $225,000.00.[1]
In October 2001, Reliance Insurance Company was declared insolvent and placed in liquidation through an order issued by the Commonwealth Court of Pennsylvania in Philadelphia. The Commonwealth Court appointed Pennsylvania Insurance Commissioner M. Diane Koken as the Liquidator and vested her with "title to all property, assets, contracts and rights of action (`assets') of Reliance, of whatever name and wherever located, whether held directly or indirectly, as of the date of the filing of the Petition for Liquidation." Paragraph 5 of the liquidation order continues:
All assets of Reliance are hereby found to be in custodia legis of this Court; and this Court specifically asserts, to the fullest extent of its authority, (a), in rem jurisdiction over all assets of the Company wherever they may be located and regardless of whether they are held in the name of the Company or any other name; (b) exclusive jurisdiction over all determinations of the validity and amount of claims against Reliance; and (c) exclusive jurisdiction over the determination of the distribution priority of all claims against Reliance."
The liquidation order was supplemented in February 2002 and in September 2002.
In May 2002, Reliance presented a premium adjustment to All Star and demanded an additional premium of $415,428.00.[2] *372 In November 2002, All Star filed a petition in the 19th Judicial District Court in East Baton Rouge Parish attempting to obtain a temporary restraining order and in injunction. All Star sought to enjoin Reliance from drawing on the letter of credit. The district court in November 2002 denied the petition for a temporary restraining order, stating that there was no irreparable harm that could not be compensated in monetary damages.
Before the hearing on All Star's petition for a preliminary injunction was conducted, Reliance filed an exception of lack of subject matter jurisdiction citing the Pennsylvania order of liquidation and the Uniform Insurers Liquidation Act (UILA) of 1939, adopted in Louisiana in 1948 as the Uniform Insurers Liquidation Law (UILL) at La.Rev.Stat. 22:757 through 22:763, governing interstate insolvencies. Reliance asserted that Pennsylvania is a reciprocal state under the UILL and that the order of liquidation was therefore entitled to full faith and credit in Louisiana under the United States Constitution. Citing La.Rev.Stat. 22:760, Reliance further argued that, because no ancillary receivership proceedings had been initiated in Louisiana, residents of Louisiana must assert their claims at law or equity against Reliance in the proceedings of the domiciliary state of the foreign insurer, Pennsylvania.
The Louisiana district court in this case sustained Reliance's exception, finding that it did not have subject matter jurisdiction in light of the Pennsylvania Commonwealth Court's order of liquidation. Though it apparently gave no reasons for its ruling, the Louisiana district court necessarily, if implicitly, found that Pennsylvania was a reciprocal state under Louisiana law and that the Pennsylvania Commonwealth Court's order of liquidation operated to divest it of subject matter jurisdiction over the litigation instituted by All Star.
The court of appeal reversed and remanded. All Star Advertising Agency, Inc. d/b/a All Star Automotive Group v. Reliance Insurance Co., in Liquidation, 03-0891 (La.App. 1 Cir. 2/23/04), 871 So.2d 371. The appellate court found the district court had erred in sustaining the exception of lack of subject matter jurisdiction, but not for the reasons asserted by All Star on appeal.[3] The court of appeal found that Pennsylvania had not adopted the UILA, citing an annotation entitled "Table of Jurisdictions Wherein Act Has Been Adopted" that formerly followed La Rev. Stat. 22:757 in West's LSA-Revised Statutes, and concluded that Pennsylvania was
*373 therefore not a reciprocal state. Thus, the appellate court reasoned, the provisions of the Louisiana's UILL are not applicable and cannot operate to confer exclusive jurisdiction over All Star's claims against Reliance in the Pennsylvania court. The court of appeal further found that full faith and credit and the doctrine of comity do not require recognition of the order of liquidation, relying on Bonura v. United Bankers Life Ins. Co., 552 So.2d 1248 (La.App. 1st Cir.1989), writ denied, 558 So.2d 1125 (La.1990), for the proposition that full faith and credit and the doctrine of comity do not require recognition of the foreign order if to do so will violate the positive law or public policy of Louisiana.
We granted the writ application filed by the Pennsylvania Insurance Commissioner as Reliance's Liquidator. 04-1544 (La.11/15/04), 887 So.2d 462.

DISCUSSION
La.Rev.Stat. 22:757(7) defines a "reciprocal state" as
any state other than this state in which in substance and effect the provisions of this law are in force, including the provisions requiring that the insurance commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer.
Following this provision in West's LSA-Revised Statutes, Volume 15B (West Publishing Co.1995), now superseded, there was a table entitled "Table of Jurisdictions Wherein Act Has Been Adopted." Some twenty-seven states and territories are listed in this table. As might be expected, the table is not found in any legislation enacting the Louisiana Uniform Insurers Liquidation Law. Furthermore, this table has been omitted from West's LSA-Revised Statutes, Volume 15A (West 2004), which is West's most recent publication of La.Rev.Stat. 22:757. Instead, the current West annotation, entitled "Historical and Statutory Notes," lists twenty-five states under the sub-heading "Comparative Laws." Clearly, the table, and the current list of "Comparative Laws," are simply annotation or reference materials provided by West, and are not intended to be a conclusive listing of the states that are to be considered reciprocal states under the definition of such set forth in La.Rev.Stat. 22:757(7).
Nor was the court of appeal's reliance on the West annotation table mandated by this court's jurisprudence. In Martin v. General American Casualty Co., 226 La. 481, 76 So.2d 537 (1954), the court was confronted with the question whether La.Rev.Stat. 22:762 of the UILL is applicable without regard to whether the domiciliary state is a reciprocal state under the UILL. The court held that this section of the UILL applies only when the domiciliary state and the ancillary state are reciprocal states as defined in La.Rev.Stat. 22:757. The court, however, was not called upon to determine whether the domiciliary state, Texas, was a reciprocal state with the ancillary state, Louisiana, because the Louisiana Secretary of State, who had brought the suit, had admitted that Texas was not a reciprocal state. 76 So.2d at 539. Accordingly, the court stated, "Since Texas is admittedly not a reciprocal state, the provisions of the insurance code dealing with the Uniform Insurance [sic] Liquidation Law, LSA-R.S. 22:757-763, cannot be applicable." 76 So.2d at 542 (emphasis removed). The Martin court made no reference to the table in the West annotation cited by the court of appeal below.
In Bonura, which the court of appeal cited, the First Circuit held, inter alia, that the Louisiana court did have subject matter jurisdiction over a suit by Louisiana residents against an insolvent Texas insurer, even though no ancillary receivership proceeding had been initiated in Louisiana, *374 because Texas was not a reciprocal state within the meaning of the Louisiana UILL. As to whether Texas was a reciprocal state under the Louisiana UILL, the court stated:
As shown by the Table of Jurisdictions immediately following Section 757 in which the Act has been adopted, Texas is not a reciprocal state. Therefore, the provisions of the Uniform Insurers Liquidation Law, and specifically Section 760, cannot be applicable in this instance. See Martin v. General American Casualty Co., 226 La. 481, 76 So.2d 537 (La.1954).
Bonura, 509 So.2d at 10. The Bonura court, however, cited no authority for merely consulting the West annotation table to determine whether Texas was a reciprocal state pursuant to La.Rev.Stat. 22:757. Moreover, the Bonura court made no analytical examination of the laws of Texas, so as to determine whether Texas was in fact a "state in which in substance and effect the provisions of [La.Rev.Stat. 22:757-763] are in force, including the provisions requiring that the insurance commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer." La.Rev.Stat. 22:757(7).
Presumably relying on Bonura, as did the court of appeal below, the Third Circuit in Krueger v. Tabor, 546 So.2d 1317 (La.App. 3rd Cir.1989), also found Texas not to be a reciprocal state under the Louisiana UILL. The Krueger court stated, without even a reference to the West table: "At the outset, it is important to note that the State of Texas has not adopted the Uniform Insurers Liquidation Act (La.Rev.Stat.22:757-22:763)." 546 So.2d at 1320.
Clearly, La.Rev.Stat. 22:757(7) does not direct a court to refer to the West annotation table to determine whether a particular state is a reciprocal state. Indeed, the courts that have considered the issue appropriately examine the laws of the other state to determine whether they are "in substance and effect" the provisions of the UILA. See, e.g., Public Service Truck Renting, Inc. v. Ambassador Ins. Co., 175 A.D.2d 632, 572 N.Y.S.2d 559 (1991); Allied Fidelity Ins. Co. v. Ruth, 57 Wash.App. 783, 790 P.2d 206 (1990); Herstam v. Bd. of Directors, Silvercreek Water and Sanitation Dist., 895 P.2d 1131 (Colo.App.1995). See also Jay M. Zitter, Annotation, Validity, Construction, and Application of the Uniform Insurers Liquidation Act, 44 A.L.R.5th 683, 1996 WL 661377 (1996-2004).
Furthermore, mechanical reliance on the West annotation table of adopting jurisdictions of the UILA could possibly lead a court into error given that the UILA, promulgated in 1939 by the National Conference of Commissioners on Uniform State Laws, has itself been superseded. In 1978, the National Association of Insurance Commissioners (NAIC) adopted a more comprehensive model law for insurer insolvency proceedings, entitled "Insurers Rehabilitation and Liquidation Model Act." The NAIC encouraged the states to adopt the Model Act, which has been enacted all or in part by over thirty states and territories, including some that had formerly adopted the UILA. See N.A.I.C. 555-63.
Pertinent to our reasoning today, the UILA, which addresses only interstate relations, was incorporated into the Model Act, according to NAIC historical notes accompanying the Model Act. The NAIC in 1968 began the process of creating a more comprehensive uniform law having to do with insurer insolvency, rehabilitation, and liquidation, and a drafting committee of the NAIC selected Wisconsin law as a starting point. Wisconsin, notably, had adopted the UILA in 1965. Consequently, the NAIC expressly based Article III of *375 the new Model Act governing "Interstate Relations" on the former UILA. Given the existence of the Model Act, in 1981 the National Conference of Commissioners on Uniform State Laws not surprisingly withdrew the UILA as the model law which the National Conference was thereafter recommending for enaction. Therefore, reliance by a court today on the former West annotation table with regard to the UILA might result in the court's overlooking the actual reciprocity of a state that has adopted either the Model Act or laws similar to the UILA "in substance and effect."
Accordingly, we find that the Bonura court erred when it found that Texas is not a reciprocal state without first having conducted an independent comparison of the Texas law to the Louisiana law to determine whether the Texas law contains provisions that are "in substance and effect" the provisions of Louisiana's UILL, La.Rev.Stat. 22:757 through 22:763. To that extent, we disapprove of Bonura and its mechanical reliance on the West annotation table. For these same reasons, we find that the court of appeal below should have conducted an independent examination of the laws of Pennsylvania to determine whether they are in substance and effect equivalent to the provisions of La. Rev. Stats. 22:757 through 22:763.[4]
We turn next to the question of whether Pennsylvania is a reciprocal state with Louisiana pursuant to La.Rev.Stat. 22:757(7). Notably, Plaintiff All Star has not asserted in this court that Pennsylvania is not a reciprocal state, nor has All Star pointed to any provision in Pennsylvania insurance liquidation law governing interstate relations that is not "in substance and effect" the Louisiana UILL. Nonetheless, we will compare Pennsylvania and Louisiana law in that regard.
For Pennsylvania to be a reciprocal state with Louisiana, the statutes of the two states need not be identical; however they must be equivalent "in substance and effect." The purpose of the UILA when it was enacted in 1939 was to break down some of the differences between states that had previously interfered with the extension of comity to foreign insurer delinquency proceedings. Twin City Bank v. Mutual Fire Marine & Inland Ins. Co., 646 F.Supp. 1139, 1140 (S.D.N.Y.1986), aff'd, 812 F.2d 713 (2nd Cir.1987); Kelly v. Overseas Investors, Inc., 24 A.D.2d 157, 264 N.Y.S.2d 586 (1st Dept.1965), rev'd on other grounds, 18 N.Y.2d 622, 272 N.Y.S.2d 773, 219 N.E.2d 288 (1966). The Prefatory Note to the UILA identifies six specific features of insurer delinquency proceedings that were then causing the "greatest embarrassment." Prefatory Note, Uniform Insurers Liquidation Act, 13 U.L.A. 322 (1986) (superseded). If each state enacted the uniform law, the National Conference of Commissioners on Uniform State Laws reasoned, *376 these past embarrassments could be remedied by the following: (1) provision that the insurance commissioner or an equivalent official shall serve as receiver; (2) authority for domiciliary receivers to proceed in non-domiciliary states so as to prevent dissipation of assets therein; (3) vesting of title to assets in the domiciliary receiver; (4) provision for non-domiciliary creditors to have the option to proceed with claims before local ancillary receivers; (5) uniform application of the laws of the domiciliary state to the allowance of preferences among claims; and (6) prevention of preferences for diligent non-domiciliary creditors with advance information. Id. Accordingly, these provisions provide a supplementary basis for comparing Louisiana's Uniform Insurers Liquidation Law to the statutes of the other state.
An examination of the Pennsylvania and Louisiana statutes reveals that each state's laws regarding interstate relations in insurer liquidation proceedings are the same "in substance and effect." La.Rev.Stat. 22:757, entitled "Uniform Insurers Liquidation Law," corresponds to Section 1 of the UILA and sets forth definitions of insurer, delinquency proceeding, state, foreign country, domiciliary state, ancillary state, reciprocal state, general assets, preferred claim, special deposit claim, secured claim, and receiver. Pennsylvania statute 40 P.S. § 221.3 contains almost identical definitions of these terms, including "reciprocal state." As noted above, a "reciprocal state" under our law means "any state other than this state in which in substance and effect the provisions of this law are in force, including the provisions requiring that the insurance commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer." La.Rev.Stat. 22:757(7). In Pennsylvania, a "reciprocal state" means "any state other than this Commonwealth in which in substance and effect [40 P.S. §§ 221.20(a), 221.55, 221.56, 221.58 to 221.60] are in force, and in which provisions are in force requiring that the commissioner or equivalent insurance official be the receiver of a delinquent insurer, and in which some provision exists for the avoidance of fraudulent conveyances and preferential transfers." 40 P.S. § 221.3. As in La.Rev.Stat. 22:735 through 22:737, Pennsylvania law requires that the court issuing an order of rehabilitation or liquidation appoint the Insurance Commissioner of the Commonwealth of Pennsylvania as the rehabilitator or the liquidator, which are both defined as the receiver. See 40 P.S. §§ 221.15(c), 221.20(c), and 221.3. Accordingly, the laws of both Louisiana and Pennsylvania provide for appointment of the insurance commissioner as the receiver in delinquency proceedings.
Next, we find that both states authorize domiciliary receivers to proceed in non-domiciliary states so as to prevent dissipation of assets therein. The relevant provision in Louisiana is La.Rev.Stat. 22:758, entitled "Conduct of delinquency proceedings against insurers not domiciled in this state."[5] La.Rev.Stat. 22:758(A) and (B) *377 are equivalent to Section 3 of the UILA, while La.Rev.Stat. 22:758(C) is equivalent to Section 10 of the UILA. In Pennsylvania, Paragraph (a) of 40 P.S. § 221.55, governing foreign domiciliary receivers in reciprocal states,[6] corresponds to the first half of La.Rev.Stat. 22:758(B), while 40 P.S. § 221.56, governing ancillary formal proceedings,[7] corresponds to La.Rev. *378 Stat. 22:758(A) and the second half of 22:758(B).
The only difference appears to be that Pennsylvania has no specific provision corresponding to Section 10 of the UILA and La.Rev.Stat. 22:758(C), which provides that "[t]he domiciliary receiver of an insurer domiciled in a reciprocal state may sue in this state to recover any assets of such insurer to which he may be entitled under the laws of this state." However, there appears to be no prohibition in Pennsylvania law against a foreign domiciliary receiver from a reciprocal state filing suit in Pennsylvania to recover assets therein. For example, 40 P.S. § 221.55(a) provides that the foreign domiciliary receiver "shall have the right to recover the other assets of the insurer located in this Commonwealth," unless an ancillary receiver has been appointed. Also, 40 P.S. § 221.23(12) authorizes the liquidator "to continue or prosecute and to institute in the name of the insurer or in his own name any and all suits and other legal proceedings, in this Commonwealth and elsewhere, ....." We see no provision in Pennsylvania law, nor any jurisprudence of that state, which would prohibit a Louisiana domiciliary receiver from filing suit in Pennsylvania to recover assets therein when the Pennsylvania Insurance Commissioner has not been appointed as an ancillary receiver pursuant to 40 P.S. § 221.56.
Both Pennsylvania and Louisiana law provide for vesting in the domiciliary receiver from a reciprocal state of title to all assets in the state. In Louisiana, La.Rev.Stat. 22:758(B) provides that the domiciliary receiver from a reciprocal state shall be vested with title to all assets located in Louisiana.[8] Similarly, Pennsylvania's 40. P.S. § 221.55(a) provides for the vesting of title to all assets located in Pennsylvania to *379 the domiciliary receiver of a reciprocal state.[9]
Next, in both Louisiana and Pennsylvania, non-domiciliary creditors have the option of proceeding with their claims before local ancillary receivers. La.Rev.Stat. 22:759, which corresponds to Section 4 of the UILA, permits non-Louisiana residents with claims against domestic insurers to file their claims either with the ancillary receiver in their reciprocal home state or with the domiciliary receiver in Louisiana.[10] Under Pennsylvania law, 40 P.S. § 221.58 similarly provides for non-Pennsylvania residents in reciprocal states.[11]
Additionally, both Louisiana and Pennsylvania law provide for claims by their residents against foreign insurers domiciled in a reciprocal state to file their *380 claims with either the ancillary receiver or the domiciliary receiver in the reciprocal state. See La.Rev.Stat. 22:760[12] and 40 P.S. § 221.59.[13] The statutes of both states also provide for the method of proving controverted claims. Id. These statutes are almost identical to Section 5 of the UILA.
Next, we find that Louisiana and Pennsylvania each provide for the uniform application of the laws of the domiciliary state to the allowance of preferences among claims. La.Rev.Stat. 22:761 governs the priority of particular claims, including special deposit claims and secured claims, and provides that the order of distribution of the domiciliary state shall control as to all claims of residents of either the domiciliary state or the ancillary state. Sub-sections 22:761(A), (B), (C), and (D) correspond to Sections 6, 7, and 8 of the UILA.[14] Pennsylvania law, 40 P.S. *381 § 221.61, provides identically for interstate priorities.[15]
The only difference between the two state's laws with regard to priorities is that Louisiana contains an additional provision not found in the UILA, namely 22:761(E), which regulates the priorities for separate accounts established by an insurer under La.Rev.Stat. 22:1500(E), added in 1993 by the legislature.[16] This *382 additional direction as to prioritization appears to be specific to Louisiana law, under which these separate accounts may be created, and was not part of the UILA. La.Rev.Stat. 22:763, corresponding to Section 12 of the UILA, mandates that "[t]his Uniform Insurers Liquidation Law (R.S. 22:757 through 22:763) shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states that enact it."[17] In that regard, we find that La.Rev.Stat. 22:763(E) is supplementary to Louisiana's UILL and does not thwart the purpose of the uniform law. Accordingly, the apparent absence of a similar provision in Pennsylvania law does not translate into a conclusion that Pennsylvania's law is not "in substance and effect" equivalent to the provisions of Louisiana's UILL.
Finally, with regard to the attachment and garnishment of assets, Louisiana and Pennsylvania have provisions virtually identical to Section 9 of the UILA. See La.Rev.Stat. 22:762[18] and 40 P.S. § 221.60.[19]

CONCLUSION
After examining the respective laws of both Louisiana and Pennsylvania governing interstate relations in multi-state insurer liquidation proceedings, we find that the laws of the two states are "in substance and effect" the same. Therefore, Pennsylvania is a reciprocal state pursuant to La.Rev.Stat. 22:757(7). While it might have been preferable, and certainly our task easier, if Louisiana and Pennsylvania had enacted the same model law governing interstate relations, and had done so in haec verba, each body of law is understandably the product of a different, independent state legislature enacting in its own fashion either the UILA or a version of the Model Act, which had incorporated the UILA. Consequently, the definition of a "reciprocal state" found in Louisiana's Uniform Insurers Liquidation Law requires the court to examine the law of both states to determine whether they are "in substance and effect" the same with regard to interstate relations in insurer liquidation proceedings. The appellate court did not conduct that examination; instead, it erroneously relied on the West annotation *383 table to determine that Pennsylvania is not a reciprocal state. Having surveyed the laws of Louisiana and Pennsylvania, we find that Pennsylvania is a reciprocal state under Louisiana's Uniform Insurers Liquidation Law, La.Rev.Stat. 22:757.
Accordingly, the court of appeal's judgment is reversed, and the matter is remanded to the court of appeal for consideration of the plaintiff's unaddressed contention that the Pennsylvania Commonwealth Court in the order of liquidation did not assert exclusive jurisdiction over a lawsuit such as the plaintiff brings here, that is, one for injunctive relief in which is sought the production of documents supporting the defendant's demand for premiums due and an injunction preventing the defendant from drawing down on a letter of credit.[20]
REVERSED AND REMANDED TO THE COURT OF APPEAL.
NOTES
[1] There is a factual dispute as to the purpose of the letter of credit. According to All Star's petition, the letter of credit was issued for the purpose of securing the retroactive premium obligation under the 1996 through 1999 policies. Reliance contends it had required All Star to obtain the letter of credit as security for All Star's contractual obligation to pay deductibles on claims owed under other policies issued after 1999.
[2] All Star asserts that Reliance was obligated to calculate the retrospective premium after eighteen months from the commencement of the three-year period in December 1996, and annually thereafter, but that Reliance presented its first retrospective calculation in May 2002.
[3] All Star, as it does in this court, contended in the appellate court that it was not asserting any claim for monetary damages against Reliance or any relief that would affect the legitimate corpus of Reliance's assets and, therefore, the order of liquidation did not grant to the Pennsylvania court exclusive jurisdiction over the case. All Star has argued that it is only requesting supporting documentation from Reliance for the calculation of the Standard Premium and the additional premium, if any, as alleged in its Petition in Paragraphs 10 and 11. In its Petition, however, All Star further asserts that Reliance is in possession of some $316,000 in Open Reserves previously paid to Reliance to pay claims from claim years 1996 through 1999, that Reliance is no longer paying or satisfying All Star's claims, that Reliance will likely not return to All Star any excess premiums paid, and that Reliance must be permanently enjoined from drawing down on the letter of credit to prevent irreparable harm to All Star "until such time as [Reliance] provides All Star with the necessary documentation to evaluate Reliance's claims and a reasonable time to review said documentation." See Petition, Paras. 12-17. In addition to injunctive relief, All Star seeks "all general and equitable relief." Petition, Prayer Art. III.
[4] As further support for its holding that the district court did have subject matter jurisdiction over the plaintiff's suit for injunctive relief against Reliance, the appellate court cited Bonura for the proposition that La.Rev.Stat. 22:629 directs that no insurance contract delivered or issued for delivery in this state which covers Louisiana residents may contain any provision that deprives the courts of this state of jurisdiction over action against the insurer. 03-0891, p. 6, 871 So.2d at 375. However, there has been no allegation that the policies issued to All Star contain such a clause. Moreover, La.Rev.Stat. 22:629 would not appear to be relevant when insolvency proceedings involving an insurer domiciled in a reciprocal state have commenced in the reciprocal state, because such proceedings are instead controlled by Louisiana's Uniform Insurers Liquidation Law at La.Rev.Stat. 22:757 through 22:763. Thus, the court of appeal's reliance on La.Rev.Stat. 22:629 was misplaced.
[5] La.Rev.Stat. 22:758 provides:

A. Whenever under the laws of this state an ancillary receiver is to be appointed in delinquency proceedings for an insurer not domiciled in this state, the court shall appoint the commissioner of insurance as ancillary receiver. The commissioner of insurance shall file a petition requesting the appointment if he finds that there are sufficient assets of such insurer located in this state to justify the appointment of an ancillary receiver, or if ten or more persons residing in this state having claims against such insurer file a petition with the commissioner of insurance requesting the appointment of such ancillary receiver.
B. The domiciliary receiver for the purpose of liquidating an insurer domiciled in a reciprocal state, shall be vested by operation of law with the title to all of the property, contracts, and rights of action, and all of the books and records of the insurer located in this state, and he shall have the immediate right to recover balances due from local agents and to obtain possession of any books and records of the insurer found in this state. He shall also be entitled to recover the other assets of the insurer located in this state except that upon the appointment of an ancillary receiver in this state, the ancillary receiver shall during the ancillary receivership proceedings have the sole right to recover such other assets. The ancillary receiver shall, as soon as practicable, liquidate from their respective securities those special deposit claims and secured claims which are proved and allowed in the ancillary proceedings in this state, and shall pay the necessary expenses of the proceedings. All remaining assets he shall promptly transfer to the domiciliary receiver. Subject to the foregoing provisions the ancillary receiver and his deputies shall have the same powers and be subject to the same duties with respect to the administration of such assets, as a receiver of an insured domiciled in this state.
C. The domiciliary receiver of an insurer domiciled in a reciprocal state may sue in this state to recover any assets of such insurer to which he may be entitled under the laws of this state.
[6] 40 P.S. § 221.55, entitled "Foreign domiciliary receivers in other states," provides as follows:

(a) The domiciliary liquidator of an insurer domiciled in a reciprocal state shall be vested by operation of law with the title to all of the property, contracts and rights of action, and all of the books, accounts and other records of the insurer located in this Commonwealth. The date of vesting shall be the date of the filing of the petition, if that date is specified by the domiciliary law for the vesting of property in the domiciliary state. Otherwise, the date of vesting shall be the date of entry of the order directing possession to be taken. The domiciliary liquidator shall have the immediate right to recover balances due from agents and to obtain possession of the books, accounts and other records of the insurer located in this Commonwealth. He also shall have the right to recover the other assets of the insurer located in this Commonwealth, subject to [40 P.S. § 221.56].
(b) If a domiciliary liquidator is appointed for an insurer not domiciled in a reciprocal state, the commissioner of this Commonwealth shall be vested by operation of law with the title to all of the property, contracts and rights of action, and all of the books, accounts and other records of the insurer located in this Commonwealth, at the same time and that the domiciliary liquidator is vested with title in the state of domicile. The commissioner of this Commonwealth may petition for a conservation or liquidation order under section [40 P.S. §§ 221.53 and 221.54], or for an ancillary receivership under [40 P.S. § 221.56], or after approval by the Commonwealth Court, may transfer title to the domiciliary liquidator, as the interests of justice and the equitable distribution of the assets require.
(c) Claimants residing in the Commonwealth may file claims with the liquidator or ancillary receiver, if any, in this Commonwealth, or with the domiciliary liquidator, if the domiciliary law permits. The claims must be filed on or before the last date fixed for the filing of claims in the domiciliary liquidation proceedings.
(d) Subject to the provisions of this section, the ancillary receiver and his deputies shall have the same powers and be subject to the same duties with respect to the administration of assets as a liquidator of an insurer domiciled in this Commonwealth.
[7] 40 P.S. § 221.56, entitled "Ancillary formal proceedings," provides:

(a) If a domiciliary liquidator has been appointed for an insurer not domiciled in this Commonwealth, the commissioner may file a petition with the Commonwealth Court requesting appointment as ancillary receiver in this Commonwealth:
(1) if he finds that there are sufficient assets of the insurer located in this Commonwealth to justify the appointment of an ancillary receiver; or
(2) if the protection of creditors or policyholders in this Commonwealth so requires.
(b) The court may issue an order appointing an ancillary receiver in whatever terms it shall deem appropriate. The filing or recording of the order with the recorder of deeds of Dauphin County shall impart the same notice as a deed, bill of sale or other evidence of title duly filed or recorded with that recorder of deeds would have imparted.
(c) When a domiciliary liquidator has been appointed in a reciprocal state, then the ancillary receiver appointed in this Commonwealth under subsection (a) shall have the sole right to recover all the assets of the insurer in this Commonwealth not already recovered by the domiciliary liquidator. The ancillary receiver shall, as soon as practicable, liquidate from their respective securities those special deposit claims and secured claims which are proved and allowed in the ancillary proceedings in this Commonwealth, and shall pay the necessary expenses of the proceedings. He shall promptly transfer all remaining assets, books, accounts and records to the domiciliary liquidator. Subject to this section, the ancillary receiver and his deputies shall have the same powers and be subject to the same duties with respect to the administration of assets as a liquidator of an insurer domiciled in this Commonwealth.
(d) When a domiciliary liquidator has been appointed in this Commonwealth, ancillary receivers appointed in reciprocal states shall have, as to assets and books, accounts, and other records in their respective states, corresponding rights, duties and powers to those provided in subsection (c) for ancillary receivers appointed in this Commonwealth.
[8] La.Rev.Stat. 22:758(B) provides in pertinent part:

B. The domiciliary receiver for the purpose of liquidating an insurer domiciled in a reciprocal state, shall be vested by operation of law with the title to all of the property, contracts, and rights of action, and all of the books and records of the insurer located in this state, and he shall have the immediate right to recover balances due from local agents and to obtain possession of any books and records of the insurer found in this state. He shall also be entitled to recover the other assets of the insurer located in this state except that upon the appointment of an ancillary receiver in this state, the ancillary receiver shall during the ancillary receivership proceedings have the sole right to recover such other assets.
[9] 40 P.S. 221.55(a) provides:

(a) The domiciliary liquidator of an insurer domiciled in a reciprocal state shall be vested by operation of law with the title to all of the property, contracts and rights of action, and all of the books, accounts and other records of the insurer located in this Commonwealth. The date of vesting shall be the date of the filing of the petition, if that date is specified by the domiciliary law for the vesting of property in the domiciliary state. Otherwise, the date of vesting shall be the date of entry of the order directing possession to be taken. The domiciliary liquidator shall have the immediate right to recover balances due from agents and to obtain possession of the books, accounts and other records of the insurer located in this Commonwealth. He also shall have the right to recover the other assets of the insurer located in this Commonwealth, subject to [40 P.S. § 221.56].
[10] R.S. 22:759, entitled "Claims of nonresidents against domestic insurers," provides:

A. In a delinquency proceeding begun in this state against an insurer domiciled in this state, claimants residing in reciprocal states may file claims either with the ancillary receivers, if any, in their respective states, or with the domiciliary receiver. All such claims must be filed on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings.
B. Controverted claims belonging to claimants residing in reciprocal states may either (1) be proved in this state as provided by law, or (2) if ancillary proceedings have been commenced in such reciprocal states, may be proved in those proceedings. In the event a claimant elects to prove his claim in ancillary proceedings, if notice of the claim and opportunity to appear and be heard is afforded the domiciliary receiver of this state as provided in R.S. 22:760 with respect to ancillary proceedings in this state, the final allowance of such claim by the courts in the ancillary state shall be accepted in this state as conclusive as to its amount, and shall also be accepted as conclusive as to its priority, if any, against special deposits or other security located within the ancillary state.
[11] 40 P.S. § 221.58, entitled "Claims of nonresidents against insurers domiciled in this state," provides:

(a) In a liquidation proceeding begun in this Commonwealth against an insurer domiciled in this Commonwealth, claimants residing in foreign countries or in states not reciprocal states must file claims in this Commonwealth, and claimants residing in reciprocal states may file claims either with the ancillary receivers, if any, in their respective states, or with the domiciliary liquidator. In reciprocal states, where an ancillary receiver has been appointed, a guaranty association of that state must file its claims with the ancillary receiver. Claims must be filed on or before the last dates fixed for the filing of claims in the domiciliary liquidation proceeding.
(b) Claims belonging to claimants residing in reciprocal states may be proved either in the liquidation proceeding in this Commonwealth as provided in this article, or in ancillary proceedings, if any, in the reciprocal states. If notice of the claim and opportunity to appear and be heard is afforded the domiciliary liquidator of this Commonwealth as provided in [40 P.S. § 221.59(b)] with respect to ancillary proceedings in this Commonwealth, the final allowance of claims by the courts in ancillary proceedings in reciprocal states shall be conclusive as to amount and as to priority against special deposits or other security located in such ancillary states, but shall not be conclusive with respect to priorities against general assets under [40 P.S. § 221.44].
[12] La.Rev.Stat. 22:760 provides:

A. In a delinquency proceeding in a reciprocal state against an insurer domiciled in that state, claimants, against such insurer, who reside within this state may file claims either with the ancillary receiver, if any, appointed in this state, or with the domiciliary receiver. All such claims must be filed on or before the last date fixed for the filing of claims in the domiciliary delinquency proceeding.
B. Controverted claims belonging to claimants residing in this state may either (1) be proved in the domiciliary state as provided by the law of that state, or (2) if ancillary proceedings have been commenced in this state, be proved in those proceedings. In the event that any such claimant elects to prove his claim in this state, he shall file his claim with the ancillary receiver in the manner provided by the law of this state for the proving of claims against insurers domiciled in this state, and he shall give notice in writing to the receiver in the domiciliary state, either by registered mail or by personal service at least forty days prior to the date set for hearing. The notice shall contain a concise statement of the amount of the claim, the facts on which the claim is based, and the priorities asserted, if any. If the domiciliary receiver, within thirty days after the giving of such notice, shall give notice in writing to the ancillary receiver and to the claimant, either by registered mail or by personal service, of his intention to contest such claim, he shall be entitled to appear or to be represented in any proceeding in this state involving the adjudication of the claim. The final allowance of the claim by the courts of this state shall be accepted as conclusive as to its amount, and shall also be accepted as conclusive as to its priority, if any, against special deposits or other security located within this state.
[13] 40 P.S. § 221.59, entitled "Claims of residents against insurers domiciled in reciprocal states," provides:

(a) In a liquidation proceeding in a reciprocal state against an insurer domiciled in that state, claimants against the insurer who reside within this Commonwealth may file claims either with the ancillary receiver, if any, in this Commonwealth, or with the domiciliary liquidator. Claims must be filed on or before the last dates fixed for the filing of claims in the domiciliary liquidation proceeding.
(b) Claims belonging to claimants residing in this Commonwealth may be proved either in the domiciliary state under the law of that state, or in ancillary proceedings, if any, in this Commonwealth. If a claimant elects to prove his claim in this Commonwealth, he shall file his claim with the liquidator in the manner provided in sections 537 and 538. The ancillary receiver shall make his recommendation to the court as under section 545. He shall also arrange a date for hearing if necessary under section 541 and shall give notice to the liquidator in the domiciliary state, either by certified mail or by personal service at least forty days prior to the date set for hearing. If the domiciliary liquidator, within thirty days after the giving of such notice, gives notice in writing to the ancillary receiver and to the claimant, either by certified mail or by personal service, of his intention to contest the claim, he shall be entitled to appear or to be represented in any proceeding in this Commonwealth involving the adjudication of the claims. The final allowance of the claim by the courts of this Commonwealth shall be accepted as conclusive as to amount and as to priority against special deposits or other security located in this Commonwealth.
[14] La.Rev.Stat. 22:761 provides:

A. In a delinquency proceeding against an insurer domiciled in this state, claims owing to residents of ancillary states shall be preferred claims if like claims are preferred under the laws of that state. All such claims owing to residents or nonresidents shall be given equal priority of payment from general assets regardless of where such assets are located.
B. In a delinquency proceeding against an insurer domiciled in a reciprocal state, claims owing to residents of this state shall be preferred if like claims are preferred by the laws of that state.
C. The owners of special deposit claims against an insurer for which a receiver is appointed in this or any other state shall be given priority against their several special deposits in accordance with the provisions of the statutes governing the creation and maintenance of such deposits. If there is a deficiency in any such deposit so that the claims secured thereby are not fully discharged therefrom, the claimants may share in the general assets, but such sharing shall be deferred until general creditors, and also claimants against other special deposits who have received smaller percentages from their respective special deposits, have been paid percentages of their claims equal to the percentage paid from the special deposit.
D. The owner of a secured claim against an insurer for which a receiver has been appointed in this or any other state may surrender his security and file his claim as a general creditor, or the claim may be discharged by resort to the security, in which case the deficiency, if any, shall be treated as a claim against the general assets of the insurer on the same basis as claims of unsecured creditors. If the amount of the deficiency has been adjudicated in ancillary proceedings as provided in this Part, or if it has been adjudicated by a court of competent jurisdiction in proceedings in which the domiciliary receiver has had notice and opportunity to be heard, such amount shall be conclusive; otherwise the amount shall be determined in the delinquency proceeding in the domiciliary state.
[15] 40 P.S. § 221.61 provides as follows:

(a) In a liquidation proceeding in this Commonwealth involving one or more reciprocal states, the order of distribution of the domiciliary state shall control as to all claims of residents of this and reciprocal states shall be given equal priority of payment from general assets regardless of where such assets are located.
(b) The owners of special deposit claims against an insurer for which a liquidator is appointed in this or any other state shall be given priority against the special deposits in accordance with the statutes governing the creation and maintenance of the deposits. If there is a deficiency in any deposit, so that the claims secured by it are not fully discharged from it, the claimants may share in the general assets, but the sharing shall be deferred until general creditors, and also claimants against other special deposits who have received smaller percentages from their respective special deposits, have been paid percentages of their claims equal to the percentage paid from the special deposit.
(c) The owner of a secured claim against an insurer for which a liquidator has been appointed in this or any other state may surrender his security and file his claim as a general creditor, or the claim may be discharged by resort to the security in accordance with section 543,[FN1] in which case the deficiency, if any, shall be treated as a claim against the general assets of the insurer on the same basis as claims of unsecured creditors.
[16] La.Rev.Stat. 22:761(E) provides:

E. Whenever a receiver is appointed for an insurer that has established one or more separate accounts under the provisions of Part XXXII of Chapter 1 of this Title [La.Rev.Stat. 22:1500(E)], each of which is deemed subject to a statutory security interest in favor of the holders of that separate account, the receiver shall segregate the encumbered assets of each separate account, holding them separate and apart from the general assets of the insurer until such time as said assets are liquidated. Upon the liquidation of the assets of each separate account, the receiver shall distribute the proceeds pro rata among the owners of such separate account, or effect a distribution of such proceeds in a manner designed to preserve the tax status of such account.
[17] Similar to La.Rev.Stat. 22:763, and Section 12 of the UILA, Pennsylvania law mandates that its insurer liquidation laws shall be "liberally construed" to effect its purposes, one of which is "lessening problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extending the scope of personal jurisdiction over debtors of the insurer outside this Commonwealth...." 40 P.S. §§ 221.1(b) and (c)(v).
[18] La.Rev.Stat. 22:762 provides:

During the pendency of delinquency proceedings in this or any reciprocal state no action or proceeding in the nature of an attachment, garnishment, or execution shall be commenced or maintained in the courts of this state against the delinquent insurer or its assets. Any lien obtained by any such action or proceeding within four months prior to the commencement of any such delinquency proceeding or at any time thereafter shall be void as against any rights arising in such delinquency proceeding.
[19] 40 P.S. § 221.60 provides:

If an ancillary receiver in another state or foreign country, whether called by that name or not, fails to transfer to the domiciliary liquidator in this Commonwealth any assets within his control other than special deposits, diminished only by the expenses of the ancillary receivership, if any, the claims filed in the ancillary receivership, other than special deposit claims or secured claims, shall be placed in the class of claims under section 544(f).
[20] See Note 3, above, for the plaintiff's arguments, as well as a summary of the allegations pleaded, and the relief prayed for, in the plaintiff's petition for injunctive relief.